Rawleigh C. WILSON,
Plaintiff–Appellant,

v.

The CIVIL TOWN OF CLAYTON,
INDIANA, et al.,
Defendants–Appellees.

No. 86–1280.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 27, 1987.

Decided Feb. 3, 1988.

Ray W. Campbell, Kirkland & Ellis, Chicago, Ill., for plaintiff-appellant.

Michelle A. Spahr, Norris, Choplin & Johnson, Indianapolis, Ind., for defendants-appellees.

Before CUMMINGS, HARLINGTON WOOD, Jr., and COFFEY, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff Rawleigh C. Wilson filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 against the Town of Clayton, Indiana and its Trustees, the County of Hendricks and its Commissioners, two town marshals, two deputy sheriffs and the bonding company which indemnified the marshals and sheriffs.[1] The meager complaint, attached hereto as an Appendix, alleges that actions by the defendants "violate[d] the plaintiff's civil rights under the United States Constitution." The district court construed the plaintiff's complaint as stating only a procedural due process claim. Then, relying on *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the court dismissed the claim against all seven catego-

---

**1.** Defendants are the Civil Town of Clayton, Indiana; the Trustees of Clayton at the time of the incident: Howard (Bud) Mitchal, Alex Shipley, Ron Abbott, Ernest Davis, Gene Horner and Iileen Ruston; the County of Hendricks, Indiana; the Commissioners of the County of Hendricks at the time of the incident: Marvin Money, Hershal Gentery, M. Richard Hemsal and the estate of Art Hemsal; two Deputy Sheriffs of Hendricks County: Larry Dockery and Frank Harris; the Marshal and Deputy Marshal of Clayton: Jim Bennett and Bill Carter; United States Fidelity and Guaranty Company, the bonding company for defendants Jim Bennett, Bill Carter, Larry Dockery and Frank Harris, and its agent, Stevenson–Jensen Agency, Inc. All individuals were sued in both their personal and official capacities.

ries of defendants, in their official and personal capacities, on the ground that the Indiana Tort Claims Act ("ITCA") provides an adequate post-deprivation state remedy.

On appeal, Wilson, now represented by appointed counsel, argues that the district court erred by narrowly construing his *pro se* complaint as nothing more than a procedural due process claim instead of reading it broadly to allege substantive constitutional violations that state a claim under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. As to the procedural due process claims, Wilson makes two arguments. First, he asserts that *Parratt* is inapposite because the alleged deprivations were the result of official policy. Second, even if *Parratt* applies, Wilson argues that the ITCA is a procedural bar to cases against state officials and state units and thus is not the kind of adequate post-deprivation remedy required by *Parratt*. We agree with the district court's narrow characterization of the complaint as one of procedural due process, but reluctantly disagree with the court's analyses of these claims. We affirm in part, reverse in part and remand for further proceedings because *Parratt* does not apply to deprivations of property allegedly not due to random and unauthorized acts.

## I

Wilson's *pro se* complaint makes the following allegations. He owned a business, the Poverty Shop,[2] in Clayton, Indiana. On the night of August 3, 1983, Clayton Town Marshals Jim Bennett and Bill Carter and Hendricks County Sheriffs Frank Harris and Larry Dockery evicted the customers and employees then present in the Poverty Shop and told them "to go home and not to come back and if they congregated there the next day or any other night they would be taken to jail because they had no business being there." Eight days later, on August 11, 1983, the Clayton Town Board of Trustees conspired to write a letter to

Wilson's landlord demanding that he evict Wilson. Despite the alleged conspiracy, the Board of Trustees never actually wrote such a letter. The complaint alleges that the failure to act on the conspiracy and to send the letter to Wilson's landlord was based on subsequent legal advice from the Clayton town attorney. Nevertheless, Wilson's landlord was contacted. Defendant Clayton Town Trustee Ernest Davis telephoned Wilson's landlord and threatened that if he did not evict Wilson "something would happen to his building." The complaint also includes several general allegations of lies, threats of violence and a cover-up.

The district court dismissed this *pro se* complaint against all defendants pursuant to a F.R.Civ.P.Rule 12(b)(6) motion to dismiss by the bonding company for the marshals and sheriffs, United States Fidelity & Guaranty Co., Inc. ("USF & G"). In reviewing this action we must follow the well-settled law of this Circuit that *pro se* complaints are not held to the stringent standards expected of pleadings drafted by lawyers. In contrast, *pro se* complaints are to be liberally construed. See *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir.1987); *Caldwell v. Miller*, 790 F.2d 589, 595 (7th Cir.1986). We also recognize that Wilson's complaint alleges civil rights violations and that a *pro se* civil rights complaint may only be dismissed if it is beyond doubt that there is no set of facts under which the plaintiff could obtain relief. *Shango v. Jurich*, 681 F.2d 1091, 1103 (7th Cir.1982).

Under this liberal standard, Wilson's complaint still fails to state a substantive constitutional claim. Wilson's appointed counsel argues that a proper examination of the complaint shows that plaintiff's allegations state claims under both the equal protection clause and the First Amendment. Counsel adds that "[t]hese legal theories are illustrative, rather than exhaustive." However, upon studying the allegations of the complaint itself, it is

---

**2.** The record does not reflect, and counsel could not state, the nature of the business conducted at the Poverty Shop.

clear that the theory of a First Amendment claim is illustrative only of creative appellate advocacy. Plaintiff's complaint simply makes no allegations which in any manner implicate First Amendment concerns.

Similarly, despite the liberality with which civil rights complaints are read, there is nothing in the plaintiff's allegations which supports an equal protection claim. Although no talismanic phrases are mandatory to state such a claim, the complaint fails to mention equal protection, discrimination, differential treatment, preference, prejudice, or any other phrase invoking the Equal Protection Clause of the Fourteenth Amendment. The closest plaintiff comes to stating such a claim is the conclusion "that the above said actions violate plaintiff's civil rights under the United States Constitution." This conclusion, without any facts alleged to support it, is simply insufficient. Therefore the district court's holding that Wilson failed to state an equal protection claim was also correct.

## II

After dismissing Wilson's substantive claims, the district court construed his complaint to allege violation of his right to procedural due process under the Fourteenth Amendment. The court then stated that complaints of procedural due process are governed by the rule of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and proceeded to dismiss the complaint against all defendants on this basis. The district court failed to recognize that *Parratt* applies only to random *and* unauthorized deprivations.

In *Parratt,* the plaintiff ordered a hobby kit to be delivered to him at the state prison where he was an inmate. The plaintiff never received the kit. He alleged that it was lost through the negligence of prison officials and filed suit in federal court under 42 U.S.C. § 1983 to recover damages. A state remedy was also available to the plaintiff, for Nebraska had a tort claims procedure which provided a remedy to persons, such as the plaintiff, who suffered tortious losses at the hands of the State. *Id.* at 530, 101 S.Ct. at 1910.

Considering whether the plaintiff could make a federal case from the negligent loss of a hobby kit valued at $23.50, the Supreme Court held that (1) a deprivation of property can violate the due process clause of the Fourteenth Amendment even if caused by mere negligence, *id.* at 536–537, 101 S.Ct. at 1913–14, but (2) the requirements of due process can be satisfied, at least where the deprivation is the result of a random and unauthorized act by a state employee, by post-deprivation remedies such as the right to bring a damage suit in state court, *id.* at 541, 543–544, 101 S.Ct. at 1916–17. The second holding was reaffirmed in another case involving a prisoner's personal property, *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), but the first holding was overruled in *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." *Id.* 106 S.Ct. at 663 (emphasis in original)); see also *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

Read broadly, *Parratt* would bar most, if not all, plaintiffs challenging deprivations of property without due process of law from federal court relief under 42 U.S.C. § 1983. If due process is satisfied by the ordinary state judicial remedies for torts, virtually no interference with property would be actionable in federal court under § 1983. Even a classic constitutional-tort case, such as that of the policeman who kills a suspect in order to bypass the cumbersome procedures of the criminal justice system, would not be actionable federally if the killing was a tort under state law. *Tavarez v. O'Malley,* 826 F.2d 671, 675 (7th Cir.1987). The Supreme Court could not have meant to deny every § 1983 plaintiff his or her day in federal court, no matter how egregious the constitutional violation, simply because of the availability of a similar state tort action. Courts have therefore sought to limit *Parratt* by making principled distinctions between it and the cases before them. See, *e.g., id.; Sullivan*

*v. Town of Salem,* 805 F.2d 81 (2d Cir. 1986); *Sanders v. Kennedy,* 794 F.2d 478 (9th Cir.1986); *Gilmere v. City of Atlanta,* 774 F.2d 1495 (11th Cir.1985) *(en banc),* certiorari denied, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986).

One limiting principle is to confine *Parratt* to cases where it is not feasible for the state to provide a hearing before the deprivation occurs. *Tavarez,* 826 F.2d at 675. For example, in *Parratt* the Supreme Court found that it was not feasible for the state to provide a pre-deprivation hearing because the loss resulted from "a random and unauthorized act" by a state employee. *Parratt,* 451 U.S. at 541, 101 S.Ct. at 1916. When a random and unauthorized act causes the loss, a pre-deprivation remedy is ordinarily infeasible, if not impossible, because the officials authorized to grant such a hearing are usually unaware of the deprivation before it occurs.

Officials may be unaware of the deprivation before it occurs for either of two reasons. First, the person committing the unconstitutional act may be employed at such a low level of state or local government that the official authorized to grant a pre-deprivation hearing would be unaware of the person's actions. Second, if the conduct is not the result of some "established state procedure," *Parratt,* 451 U.S. at 541, 101 S.Ct. at 1916, the state cannot predict precisely when the loss will occur. And if the state cannot predict when the loss will occur, it cannot provide a meaningful hearing before the deprivation takes place. *Id.* Thus to determine the feasibility of a pre-deprivation hearing in this case, and therefore the applicability of *Parratt,* we must consider the position of each defendant in the town and county bureaucracies and the nature of the actions taken.

A. Liability of the Civil Town of Clayton

■ The district court dismissed the procedural due process claim against the Civil Town of Clayton (the "Town") on the basis of *Parratt.* However, the susceptibility of any municipality to liability under § 1983 must initially be tested under the requirements of *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In a procedural due process case such as this, resolution of the *Monell* issue will also resolve the *Parratt* issue.

In *Monell* the Supreme Court overruled *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), and held that municipalities and other local government units are included among the "persons" to whom § 1983 applies. *Monell,* 436 U.S. at 663, 690, 98 S.Ct. at 2021, 2035. However, at the same time the Court limited the liability of a municipality to situations in which "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691, 98 S.Ct. at 2036. In other words, the Court held that a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Id.* at 691, 98 S.Ct. at 2036.

Because a municipality may only be liable for "acts which the municipality has officially sanctioned or ordered," *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986), its liability can never be premised on the result of a random and unauthorized act. The district court's dismissal of Wilson's claim against the Town on the basis of *Parratt* misses the point of *Parratt.* "In *Parratt,* the Court emphasized that it was dealing with 'a tortious loss of ... property as a result of a random and unauthorized act by a state employee ... not a result of some established state procedure.'" *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 435–36, 102 S.Ct. 1148, 1157–58, 71 L.Ed.2d 265 (1982) (quoting *Parratt,* 451 U.S. at 541, 101 S.Ct. at 1916). When it is the Town itself that is being sued, and the suit is allowed under *Monell* because the action was executed in accordance with "official policy," the tortious loss of property can never be the result of a random and unauthorized act. Therefore, a complaint asserting municipal liability under *Monell* by definition states a claim to which *Parratt* is inapposite. See *Zimmerman Brush,* 455 U.S. at 435–36, 102 S.Ct. at 1157–58; *Town of Salem,* 805 F.2d at 86; *Flower Cab Co. v. Petitte,* 658 F.Supp.

1170, 1178–79 (N.D.Ill.1987); Bandes, *Monell, Parratt, Daniels, and Davidson: Distinguishing a Custom or Policy from a Random, Unauthorized Act,* 72 Iowa L.Rev. 101 (1986).

Accordingly, although the district court dismissed the procedural due process claim against the Town on the basis of *Parratt,* the viability of the claim must be examined under *Monell.* Under that case, the complaint must be dismissed unless the eviction of the employees and patrons of the Poverty Shop and the threats to plaintiff's landlord can be attributed directly to the Town as the result of "official policy."

"Official policy" often refers to formal rules and statements that are intended to establish fixed plans of action to be followed under similar circumstances consistently over time. *Pembaur,* 106 S.Ct. at 1299. Wilson has not alleged the existence of any such continuing policy. However, "a municipality may [also] be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body has taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy." *Id.* at 1298; see also *Bohen v. City of East Chicago, Indiana,* 799 F.2d 1180, 1188–89 (7th Cir.1986) (a single act of a sufficiently high-ranking policymaker is sufficient to establish an entity's policy or custom); *Malak v. Associated Physicians, Inc.,* 784 F.2d 277, 283–84 (7th Cir.1986) (single act of a sufficiently high-ranking policymaker renders the government entity liable under § 1983).

Wilson alleges actions by the Board of Trustees of the Town that were directed only at him. The Supreme Court has held that when a government chooses a course of action tailored to a particular situation and not intended to control decisions in later situations, under certain circumstances these individualized actions also constitute "official policy." *Pembaur,* 106 S.Ct. at 1298–99. See, *e.g., Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (city council

cancelled license permitting concert because of dispute over content of performance); *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (city council passed resolution firing plaintiff without a predetermination hearing). The "certain circumstances" under which individualized actions constitute official policy are those in which the officials who acted had the authority to make policy for the Town. Therefore once the officials who have authority to make policy for the Town are identified, their actions pursuant to that policy are attributable to the Town. *Soderbeck v. Burnett County, Wisconsin,* 752 F.2d 285, 292–93 (7th Cir.1985), certiorari denied, 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 261; *Reed v. Village of Shorewood,* 704 F.2d 943, 952–53 (7th Cir.1983).

Read in the light most favorable to the plaintiff, the complaint lists sufficient actions by the Trustees to allege "official policy" and impose liability on the Town under § 1983. Although defendants may establish that the alleged actions did not in fact occur or that they were not within the authority of the Trustees, at this stage in the litigation dismissal is inappropriate. As to the procedural due process claim against the Civil Town of Clayton, we reverse and remand to determine whether the acts alleged in fact occurred and if so whether they were authorized.

**B. Liability of the Board of Trustees**

As with the claim against the Town, the district court dismissed the procedural due process claim against the Board of Trustees (the "Trustees") on the basis of *Parratt.* Since these defendants' acts may not have been random and may have been authorized, *Parratt* is again inapplicable. The Trustees were sued in both their personal and official capacities and each of these is discussed separately in this opinion.

First, as to official-capacity suits, they "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985)

(quoting *Monell,* 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55). An official-capacity suit is not a suit against the official as an individual; the real party in interest is the entity. Therefore a plaintiff seeking to recover on a damages judgment in an official-capacity suit can look only to the entity itself, not to the official. *Graham,* 473 U.S. at 166, 105 S.Ct. at 3105; see also *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1238 (7th Cir.1986); *Rascon v. Hardiman,* 803 F.2d 269, 274 (7th Cir. 1986); *Brunken v. Lance,* 807 F.2d 1325, 1329 (7th Cir.1986).

█ To the extent that the Trustees are sued in their official capacities, the action operates as a claim against the Town itself. As discussed above, a claim that is against the Town itself and is allowed under *Monell* cannot be random *and* unauthorized. Because *Parratt* applies only to actions that are random *and* unauthorized, it does not apply to the claim against the Trustees in their official capacities.

█ In contrast to official-capacity suits, personal-capacity suits seek to impose personal liability on a government official for actions he or she takes under color of state law. *Graham,* 473 U.S. at 165, 105 S.Ct. at 3105. Because personal-capacity suits are really suits against the official as an individual, not against the government entity, *Monell* is always inapplicable. In this case, *Parratt* is also inapplicable.

The complaint alleges specifics of actions taken by all of the Trustees as well as an individual action by Trustee Ernest Davis. The stated facts are sufficient to allege both that the Trustees were employed at such high levels of local government that it would be feasible for the Town to provide an opportunity for a pre-deprivation hearing and that the loss may have been the result of a state procedure established by these defendants for the purpose of depriving this particular plaintiff of his rights. In either case, a pre-deprivation hearing would be feasible and *Parratt* therefore inapposite. The dismissal of the complaint against the Board of Trustees in both their official and personal capacities is reversed and the cause of action remanded.

### C. Liability of the Marshal and Deputy Marshal of the Civil Town of Clayton

█ The Marshal and Deputy Marshal of the Civil Town of Clayton (the "Marshals") were also sued in both their personal and official capacities. Again relying on *Parratt,* the district court dismissed both such claims. Because the suit against the Marshals in their official capacities is only another way of pleading an action against the Town, it states a federally cognizable § 1983 claim for the eviction only if an action naming the Town as defendant would state such a claim. See *Graham,* 473 U.S. at 165, 105 S.Ct. at 3105; see also *supra* at 382. Therefore our analysis begins with *Monell* rather than *Parratt.*

The Town cannot be liable for the actions of the Marshals on the basis of *respondeat superior. Monell,* 463 U.S. at 694, 98 S.Ct. at 2037. The Town can only be liable for the actions taken by the Marshals when they evicted the employees and customers from the Poverty Shop if that action was taken pursuant to official Town policy. The complaint contains no allegations to support this conclusion.

The eviction of Wilson's customers and employees occurred on the night of August 3, 1983. The first of the actions by the Trustees that sufficiently alleged official policy to allow a federal § 1983 action against the Town and the Trustees in their official capacities occurred on August 11, 1983, when the so-called conspiracy commenced. Wilson does not, and could not, allege that the actions taken by the Marshals on August 3, 1983, were done pursuant to this official policy because it did not yet exist.

Wilson need not, however, depend on official policy created by the Trustees. If the Marshals had the authority to make law enforcement policy for the Town, they could create official policy and the eviction could have been undertaken pursuant to this official policy. See *Soderbeck,* 752 F.2d at 292–93; *Village of Shorewood,* 704 F.2d at 952–53. However, to hold that they were in a position to establish

final police policy would require wild speculation, totally unsupported by even a liberal reading of the complaint. The complaint alleges no official policy requiring or allowing the Marshals' actions; therefore the action cannot be attributed to the Town. The cause of action against the Marshals in their official capacities fails to state a claim.

■■■ To the extent the Marshals are sued in their personal capacities, *Parratt* does apply and requires dismissal of the federal claim. The corollary of our holding that the actions of the Marshals were not pursuant to official policy is that they were random and unauthorized. Under *Parratt*, when deprivations of property are effected through random and unauthorized actions of state employees and the state provides an adequate postdeprivation remedy, the requirements of due process are satisfied and the plaintiff may not maintain a § 1983 suit in federal court. *Parratt*, 451 U.S. at 543–44, 104 S.Ct. at 3208–09.

The district court found that the State of Indiana, through the Indiana Tort Claims Act, Ind.Code § 34–4–16.5–1 *et seq.*, provides Wilson with post-deprivation process for his claim. The court further held that this state remedy was "adequate" to satisfy the standard of *Parratt*. Wilson challenges the district court's holding that the ITCA provides an adequate state remedy. He argues that the ITCA is a procedural statute that limits, rather than creates, liability. He also attempts to distinguish cases cited by the district court as authority in support of its holding that the ITCA provides an adequate substantive remedy. However, subsequent to the district court's decision we published an opinion addressing precisely this issue. *Hossman v. Spradlin*, 812 F.2d 1019 (7th Cir.1987). There this Court held that the ITCA "provides a constitutionally adequate remedy to redress property loss caused by a state officer and avoids appellant's claims that he was intentionally deprived of his property without due process of law." *Id.* at 1023. Wilson's arguments do not persuade us to reconsider this recent precedent.

The dismissal of the complaint against the Marshals in their official and personal capacities is affirmed.

**D. Liability of the County of Hendricks**

■■ Like that of the Civil Town of Clayton, the initial inquiry in determining the susceptibility of the County of Hendricks (the "County") to suit is under *Monell*, not *Parratt*. The complaint fails to allege any actions by the County. It also fails to allege any actions by the County Commissioners. It does allege actions by the County Sheriffs, but none that can be attributed to the County as "official policy." Under the allegations of the complaint, liability of the County could only be premised on the theory of *respondeat superior* for the actions of the County Sheriffs and *Monell* expressly precludes such suits. *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036. The dismissal of the cause of action against the County is therefore affirmed.

**E. The Liability of the Commissioners of the County of Hendricks**

■■ The Commissioners of the County of Hendricks (the "Commissioners"), like the Town Trustees, were sued in both their personal and official capacities. The district court dismissed the complaint against them based on *Parratt*. We affirm the dismissal on alternate grounds.

To the extent that the Commissioners are sued in their official capacities, the action operates as a claim against the County itself. See *Graham*, 473 U.S. at 165, 105 S.Ct. at 3105, see also *supra* at 382. We just concluded that the complaint fails to state a § 1983 federal cause of action against the County. Therefore the claim against the County, in the form of a pleading against the Commissioners in their official capacities, also fails to state a claim and justifies affirmance.

■■ The Commissioners were also sued in their personal capacities. An official who is sued in his or her personal capacity can only be held liable for his or her individual wrongdoing. Section 1983 does not recognize a doctrine of superior's liability. *Duckworth v. Franzen*, 780 F.2d 645, 650

(7th Cir.1985), certiorari denied, —— U.S. ——, 107 S.Ct. 71, 93 L.Ed.2d 28. As indicated above, Wilson's complaint makes no allegations regarding the Commissioners. We assume Wilson hoped to hold them liable for the actions of the Hendricks County Deputy Sheriffs. However, the Commissioners cannot be held liable on the basis of *respondeat superior.* Because the complaint lacks any allegations regarding the Commissioners personally, dismissal was appropriate.

### F. Liability of the Deputy Sheriffs of the County of Hendricks

As with the prior defendants, the Deputy Sheriffs of the County of Hendricks (the "Sheriffs") were sued in both their personal and official capacities and the district court dismissed both claims on the basis of *Parratt. Parratt* is inapplicable to the suit against the Sheriffs in their official capacities but is applicable to the suit against them in their personal capacities.

First, to the extent the Sheriffs were sued in their official capacities the claim is one against the County itself. See *Graham,* 473 U.S. at 165, 105 S.Ct. at 3105; see also *supra* at 382. Because the complaint fails to state a § 1983 federal cause of action against the County, this permutation also fails to state a claim. The dismissal of the complaint against the Sheriffs in their official capacities was proper.

To the extent the Sheriffs were sued in their personal capacities, *Parratt* applies and requires dismissal of the federal claim. The complaint states facts sufficient to allege that the Sheriffs deprived Wilson of his property without due process, but fails to state facts sufficient to allege that their actions were anything but "random and unauthorized." *Parratt* therefore applies and because the ITCA provides an adequate post-deprivation remedy, the requirements of due process are satisfied. Accordingly, the dismissal of the § 1983 claim against the Sheriffs in their personal capacities was correct.

### G. Liability of United States Fidelity and Guaranty Company and Its Agent

As to the final defendants, United States Fidelity and Guaranty Company ("USF & G") and its agent, Stevenson–Jensen Agency, Inc., we lack subject matter jurisdiction. USF & G filed with the district court a motion to dismiss pursuant to F.R.Civ.P.Rules 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim. The district court, without addressing the existence of federal jurisdiction, held that the complaint failed to state a claim and dismissed the cause of action against all defendants. We have a responsibility in every case to determine independently whether this Court has subject matter jurisdiction and otherwise to dismiss the case.[3] *Darryl H. v. Coler,* 801 F.2d 893, 907 n. 13 (7th Cir.1986); *Ross v. Inter–Ocean Insurance Co.,* 693 F.2d 659, 660 (7th Cir.1982); *Indiana Port Comm'n v. Bethlehem Steel Corp.,* 702 F.2d 107, 109 (7th Cir.1983).

The plaintiff asserted jurisdiction in the district court under 28 U.S.C. § 1343(a)(3), which grants jurisdiction over claims that persons acting under color of state law have violated the Constitution of the United States or a federal statute providing for equal rights. The complaint, however, contains no allegations that defendant USF & G violated the Constitution or federal law. The first reference to USF & G in the complaint, other than in the caption, appears beneath the plaintiff's prayer for relief, which itself followed the plaintiff's list of "overt acts perpetrated by the defendants." Instead of alleging specific violations committed by USF & G the complaint alleges secondary liability: "[d]efendants, United States Fidelity and Guaranty Co. and Stevenson–Jenson [sic] Agency, Inc. are held at harm as parties of the third part, because of their contractual interest, they are the bonding entity of their respective contracts." Thus any claim plaintiff may have against USF & G and its agent arises out of state contract law, not out of the Constitution or federal law. Accord-

---

**3.** On appeal USF & G did challenge our jurisdiction. Even if it had failed to raise such an objection of its own, we would have had the responsibility to raise the issue *sua sponte. Indiana Port Comm'n v. Bethlehem Steel Corp.,* 702 F.2d 107, 109 (7th Cir.1983).

ingly, we affirm the dismissal of the complaint against USF & G but for want of subject matter jurisdiction.

III

To summarize, the cause is remanded for further proceedings with respect to the procedural due process claims against the Town of Clayton and its Trustees in both their official and personal capacities. In all other respects the judgment is affirmed; parties to bear their own costs.

A P P E N D I X

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RAWLEIGH C. WILSON )
PLAINTIFF, )
V.      P.O. BOX 24 )
CLAYTON, IN 46118 )
THE CIVIL TOWN OF CLAYTON INDIANA, THE )
TRUSTEES OF THE CIVIL TOWN OF CLAYTON )
INDIANA AND THE PERSONS THEREOF: )
HOWARD (BUD) MITCHAL, ALEX SHIPLEY, )
RON ABBOTT,      ERNEST DAVIS, )
GENE HORNER,      IILEEN RUSTON, )
P.O. BOX 23, CLAYTON, IN 46118,

DOCKET NO._____

CASE NO._____

IP851194C

THE COUNTY OF HENDRICKS, HENDRICKS COUNTY INDIANA, THE COMMISSIONERS OF THE COUNTY OF HENDRICKS AND THE PERSONS THEREOF:
MARVIN MONEY, HERSHAL GENTERY, M. RICHARD HEMSAL, ART HEMSAL (DECEASED),

THE PERSONS OF, AND DEPUTY SHERIFFS OF HENDRICKS COUNTY:
LARRY DOCKERY, 1245 E. 36, DANVILLE, IN 46122, FRANK HARRIS, 1245 E. 36, DANVILLE, IN46122

THE PERSONS OF, AND MARSHAL AND DEPUTY MARSHAL OF THE CIVIL TOWN OF CLAYTON:
JIM BENNETT, P.O. BOX 23, CLAYTON, IN 46118, BILL CARTER, P.O. BOX 23, CLAYTON, IN 46118

THE BONDING COMPANY OF JIM BENNETT, BILL CARTER, LARRY DOCKERY, AND FRANK HARRIS, AND AGENT COMPANY, UNITED STATES FIDELITY AND GUARNTY CO. (BONDING COMPANY), STEVENSON-JENSEN AGENCY, INC. (AGENT),148½ S. WASHINGTON ST., DANVILLE, IN 46122, PHONE NO. (317) 745-4466::
LARRY DOCKERY BOND # 31-0170-11061-81-8, FRANK HARRIS BOND # 31-0170-11525-82-7,
JIM BOND #        . BILL CARTER BOND #

CIVIL COMPLAINT

COMES NOW THE PETITIONER, PLAINTIFF, RAWLEIGH C. WILSON, IN PRO. SE., AND ASSERTS THIS CIVIL SUIT UNDER THE AUTHORITY OF TITLE 42 U.S.C. SECTION 1983, AND JURISDICTION OF TITLE 28 U.S.C. SECTION 1343 (3).

PLAINTIFF ASSERTS THAT ON OR ABOUT AUGUST 3,1983 TIME ABOUT 10:30 P.M. POLICE OFFICERS ACTING UNDER COLOR OF STATE LAW EVICTED CUSTOMERS AND AGENTS OF PLAINTIFF FROM PLAINTIFF'S PLACE OF BUSINESS, BY THE NAME OF POVERTY SHOP. CUSTOMERS AND AGENTS ON THE PREMISES WAS TOLD BY POLICE TO GO HOME AND NOT TO COME BACK AND IF THEY CONGREGATED THERE THE NEXT DAY OR ANY OTHER NIGHT THEY WOULD BE TAKEN TO JAIL BECAUSE THEY HAD NO BUSINESS BEING THERE. POLICE OFFICERS HAD NO PROBABLE CAUSE OR REASON FOR THEIR ACTIONS, NO COMPLAINTS HAD BEEN MADE THE OFFICERS ACTED ON THEIR OWN ILL WILL, MALICE AND DESIRE TO CAUSE INJURY TO THE PLAINTIFF.

THE POLICE OFFICERS INVOLVED IN THESE INCIDENTS WERE CLAYTON TOWN MARSHALL JIM

000006

BENNETT, CLAYTON TOWN DEPUTY MARSHALL BILL CARTER, HENDRICKS COUNTY DEPUTY SHERIFF

FRANK HARRIS AND HENDRICKS COUNTY DEPUTY SHERIFF LARRY DOCKERY.

PLAINTIFF ALSO LISTS THE FOLLOWING OVERT ACTS PERPETRATED BY THE DEFENDANTS:

1.) AUGUST 11, 1983 THE CLAYTON TOWN BOARD OF TRUSTEES CONSPIRED TO WRITE A LETTER TO HARTSEL WILHITE, PLAINTIFF'S LAND LORD, THE LETTER WAS TO ASK THE LAND LORD TO EVICT TENANTS FROM HIS BUILDING.

2.) AUGUST 22, 1983 DAVID LAWSON, CLAYTON TOWN ATTORNEY TOLD THE TOWN TRUSTEES THEY CAN NOT WRITE A LETTER TO A PROPERTY OWNER ASKING FOR A TENANT TO BE EVICTED.

3.) CLAYTON TOWN TRUSTEE ERNEST DAVIS CALLED BY TELEPHONE HARTSEL WILHITE, PLAINTIFF'S LAND LORD AND ASK MR. WILHITE TO EVICT ME "OR SOMETHING WOULD HAPPEN TO HIS BUILDING".

4.) THE TOWN OF CLAYTON REFUSED TO ANSWER INQUIRES BY THE INDIANA CIVIL LIBERTIES UNION.

5.) THE HENDRICKS COUNTY SHERIFF'S DEPARTMENT REFUSED TO ANSWER INQUIRES BY THE INDIANA CIVIL LIBERTIES UNION AND TRIED TO COVER UP THE INCIDENT.

6.) THE DEFENDANTS MADE TREATS OF VIOLANCE AND OFFERS OF REWARD TO PEOPLE TO LIE ABOUT THIS INCIDENT.

7.) THE DEFENDANTS LIED ABOUT OTHER MATTERS TO DISTORT THE TRUTH OF THIS INCIDENT, AND TO DISCREADIT THE PLAINTIFF.

8.) CLAYTON TOWN MARSHAL TOLD PEOPLE THAT THE PLAINTIFF MADE COMPLAINTS AGINST OTHER PEOPLE, HE LIED TO THEM TO CREATE ILL WILL AGINST THE PLAINTIFF.

WHEREFORE PLAINTIFF ASSERTS THAT THE ABOVE SAID ACTIONS VIOLATE PLAINTIFF'S

CIVIL RIGHTS UNDER THE UNITED STATES CONSTITUTION. PLAINTIFF THEREFORE PRAY THE

HONORABLE COURT AWARD COMPENSATION AND DAMAGES TO THE PLAINTIFF AND ANY AND ALL OTHER

SUCH RELIFE AS THE COURT MAY SEEM JUST AND PROPER.

### POINT OF CLARIFIACITION

DEFENDANTS, UNITED STATES FIDELITY AND GUARANTY CO. AND STEVENSON-JENSON AGENCY,

INC. ARE HELD AT HARM AS PARTIES OF THE THIRD PART, BECAUSE OF THEIR CONTRACTUAL

INTREST, THEY ARE THE BONDING ENTITY OF THEIR RESPECTIVE CONTRACTS.

DAMAGES AND COMPENSATION PLAINTIFF DEMANDS OF THE DEFENDANTS IS AS FOLLOWS:

1.) COMPENSATORY COMPENSATION : TEN MILLION DOLLORS ( $10,000,000 ).

2.) PUNITIVE DAMAGES: TEN MILLION DOLLORS ( $10,000,000 ).

3.) TOTAL IN DAMAGES OWED TO PLAINTIFF IS TWENTY MILLION DOLLORS ( $20,000,000 ).

DATE: JULY 29, 1985        RESPECIFULLY SUBMITTED

PLAINTIFF FOREVER SUBMITS.       RAWLEIGH C. WILSON, P.O. BOX 24, CLAYTON, IN 46118