**Blanche MATTHIESSEN,**
**Plaintiff–Appellant,**

v.

**BOARD OF EDUCATION OF NORTH CHICAGO COMMUNITY HIGH SCHOOL DISTRICT 123, LAKE COUNTY, ILLINOIS, Defendant–Appellee.**

No. 87–3150.

United States Court of Appeals,
Seventh Circuit.

Argued June 1, 1988.

Decided Sept. 14, 1988.

Mildred F. Haggerty, Haggerty & Koenig, Chtd., Chicago, Ill., for plaintiff-appellant.

Michael J. Duggan, Klein, Thorpe & Jenkins, Ltd., Chicago, Ill., for defendant-appellee.

Before WOOD, Jr., FLAUM and RIPPLE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff-appellant Blanche Matthiessen, a teacher employed by defendant-appellee Board of Education of North Chicago Community High School District 123 (the Board), was dismissed at the end of her third year. Matthiessen initiated this case in federal court pursuant to 42 U.S.C. § 1983, claiming that she was wrongfully terminated by the Board without a hearing in violation of her right to due process. Matthiessen's complaint includes a pendent state law claim seeking a declaration that she is a tenured teacher. Matthiessen seeks reinstatement, back pay, and damages for mental pain and anguish. Prior to trial, the Board moved for summary judgment. The district court granted that motion, finding that the plaintiff was not tenured under Illinois law. Therefore, the district court held that the Board did not violate Matthiessen's due process rights by dismissing her without granting her request for a pre-termination hearing. We reverse.

## I. FACTUAL BACKGROUND

The Board first employed Matthiessen as a probationary teacher at the beginning of the 1983–84 school year. She had no prior teaching experience. Matthiessen continued teaching for a second year. On March 19, 1985, toward the end of her second year of probationary teaching, Matthiessen met with her department head and immediate supervisor, Beatrice Luther. Luther advised Matthiessen that her probationary period would be extended for a third school year, 1985–86, which would postpone possible tenure. Luther then handed Matthiessen a letter to the same effect; the letter explained that the third year of the probationary period was to provide Matthiessen time to demonstrate improvement in six specified areas.[1] The letter also stated

---

1. The letter listed six areas needing improvement:
   1. Become more discreet in your discussions of students and their problems.
   2. Maintain confidentiality regarding school information of a confidential nature.
   3. Become familiar with District 123's Chain of Command in handling school related concerns.
   4. Follow school procedure in handling student/teacher and teacher/supervisor problems.

that Principal/Superintendent William Snodgrass concurred in Luther's recommendation to extend Matthiessen's probation. The letter concluded by advising the plaintiff that her improvement would be reviewed at the end of the third year and, if she had satisfactorily improved, tenure would be granted. After reading the letter, Matthiessen personally sought confirmation from the superintendent that her supervisor's recommendation would be accepted. Matthiessen was informed that the recommendation would be presented to the Board.

The Board met on March 21, 1985 and voted unanimously to extend plaintiff's probationary period for a third year. The parties dispute what notice the plaintiff received regarding the Board's action. Matthiessen alleges that she received neither written nor verbal notice of the extension of her probation. The superintendent, however, claims in his affidavit that he personally notified Matthiessen of the Board's action on the day following the Board's meeting.

The plaintiff continued to teach during the third school year and, according to her deposition, considered herself to be on probation. During the second semester of the third year, however, the teachers' union president advised Matthiessen that there was a procedural problem with her probationary status. The union president told her that the Board had not complied with the requisite statutory procedures in extending her probation for the third year. Matthiessen understood that if the Board had not properly extended her probation, she might have automatically become tenured under Illinois law.

On March 20, 1986, about a year after the meeting at which the Board had voted to extend the plaintiff's probation, the Board met and adopted a resolution. The resolution stated that the plaintiff's teaching performance had been reviewed during her third probationary year and that, concurring with the recommendation of the school administration, the Board had decided not to reemploy the plaintiff for the 1986–87 school year. The reasons for the Board's action were later set forth in a letter, which the plaintiff received on June 30, 1986. Following the Board's decision to terminate her, Matthiessen and her representative repeatedly requested a hearing, but their requests were denied.

## II. DISCUSSION

This case is before us on a motion for summary judgment. Rule 56 of the Federal Rules of Civil Procedure sets forth the standard for deciding such motions. "[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord McGraw–Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1167 (7th Cir.1986). Regarding a factual dispute, "the mere possibility that [it] may exist, without more, is an insufficient basis upon which to justify denial of a motion for summary judgment." *Posey v. Skyline Corp.*, 702 F.2d 102, 106 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In reviewing the evidence "any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party, [but] only reasonable inferences will be considered," *Hermes v. Hein*, 742 F.2d 350, 353 (7th Cir.1984). We will reverse the district court's decision regarding summary judgment "[i]f a study of the record reveals that inferences contrary to those drawn by the trial court might be permissible." *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985).

■ A provision of the Illinois School Code [2] requires a school board to provide

---

5. Discuss your concerns with your immediate supervisor in an attempt to resolve them before involving other staff members.
6. Remain in your classes and keep your students involved with class tasks during class time.

2. Ill.Ann.Stat. ch. 122, para. 24–12 (Smith–Hurd Supp.1988).

written notice and an opportunity for a hearing prior to dismissing tenured teachers. The Board admittedly did not follow that practice in dismissing Matthiessen. The Board concedes that if the plaintiff was tenured at the time of her dismissal, and not still on probation, then her dismissal was in violation of the Illinois statute and the plaintiff is entitled to reinstatement with back pay. Thus, this case turns on the issue of whether or not Matthiessen was tenured under Illinois law.[3]

■ Another provision of the School Code[4] provides that when a teacher without any prior experience, such as the plaintiff, nears the end of his or her second year of employment, the school board has only three options open to it. First, it can dismiss the teacher by giving notice of the reasons for the dismissal sixty days prior to the end of the school term, terminating the teacher's employment rights. The Board did not attempt to dismiss Matthiessen at the end of her second year. Second, the school board can extend the teacher's probationary period for a third year by giving the teacher notice by certified mail at least sixty days before the end of the school term. The notice must set forth the reasons for the extension of probation and

---

**3.** Matthiessen moved that we certify to the Supreme Court of Illinois the question of whether or not she is tenured under Illinois law. "Rule 20 of the Illinois Supreme Court Rules (adopted August 30, 1983) allows certification of a question of Illinois law to the Illinois Supreme Court when the question is determinative of the case and there is no clear controlling Illinois Supreme Court precedent." *Collins Co., Ltd. v. Carboline Co.,* 837 F.2d 299, 303 (7th Cir.1988). Our Circuit Rule 52 provides for such a certification from this court, and this court has utilized the procedure when controlling state law is unclear. *Id.* at 302. The tenure question may be determinative of this case, but Illinois caselaw is not so unclear that certification is necessary to divine its meaning. Matthiessen's motion to certify the question of her tenure status to the Supreme Court of Illinois is denied.

The Board also sought to remove the question from the federal court. Before the case was decided by summary judgment, the Board had filed a motion to dismiss on the basis that the complaint failed to state a cause of action under section 1983 because it failed to demonstrate the existence of any federal question jurisdiction under the teaching of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The Board has also raised this issue on appeal. *Parratt* held that a deprivation of property did not violate due process "where the deprivation is the 'result of a random and unauthorized act by a state employee,' *id.* at 541, 101 S.Ct. at 1916[, and there are adequate] post-deprivation remedies such as the right to bring a damage suit in state court." *Tavarez v. O'Malley,* 826 F.2d 671, 675 (7th Cir.1987). Where *Parratt* applies it results in the dismissal of the due process claim.

"Random and unauthorized" has been interpreted both narrowly and broadly. "Read narrowly it merely identifies the situation where a pre-deprivation remedy is infeasible because the officials authorized to grant such a hearing are unaware of the deprivation before it occurs." *Id.* at 677. This may be because "the person committing the unconstitutional act may be employed at such a low level of state or local government that the official authorized to grant a pre-deprivation hearing would be unaware of the person's actions." *Wilson v. Civil Town of Clayton,* 839 F.2d 375, 380 (7th Cir.1988). "Read more broadly, ... *Parratt* places beyond the reach of section 1983 any loss that 'is not a result of some established state procedure,' 451 U.S. at 541, 101 S.Ct. at 1916, ... even if the loss might have been averted by a predeprivation hearing." *Tavarez,* 826 F.2d at 677. In such a case the state cannot predict when a loss will occur. *Wilson,* 839 F.2d at 380.

Under the narrow reading the Board's action is not random and unauthorized. The Board is the body that is authorized to grant hearings, and thus it cannot be unaware that a hearing was not provided. Likewise under the broad reading the Board's action was not random and unauthorized. It is true that the Board's alleged action was not pursuant to the School Code, but in contravention of it, and thus would seem not to be pursuant to established state procedure. However, the single act of a sufficiently high-ranking policymaker may equate with or be deemed established state procedure; therefore, here *Parratt* is inapposite even under the broad reading. *Tavarez,* 826 F.2d at 677; *Wilson,* 839 F.2d at 381 (defining "official policy" for the purpose of finding *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), satisfied and *Parratt* necessarily inapplicable). The Board's *Parratt* argument fails.

The plaintiff asked for a hearing, and her request was denied. This was unfortunate. The Board and the state courts are better equipped to make tenure decisions under the state statute, but by only loosely complying with the state statute and denying the hearing provided, the Board has allowed this case to come within the jurisdiction of the federal courts. There was no need to force Matthiessen to seek a judicial remedy as there was an adequate state statutory remedy designed to afford due process.

**4.** Ill.Ann.Stat. ch. 122, para. 24–11 (Smith–Hurd Supp.1988).

the corrective actions that the teacher must take to achieve tenure at the end of the third year of probation. The Board at least attempted to follow this procedure. Third, the school board can do nothing, in which case the teacher is automatically reemployed as a tenured teacher. Although the Board attempted to take some action, the plaintiff nevertheless relies on this third provision in claiming that she is now tenured.

The plaintiff claims that the Board did not notify her by registered mail about the extension of her probation and the reasons for it. She *only* received the letter from her supervisor, outlining her supervisor's recommendations. Therefore, Matthiessen claims that the extension of her probation was ineffective and, as a result, she became tenured. Matthiessen claims that because she was actually a tenured teacher, she was entitled to notice and a pre-termination hearing before the Board could dismiss her.

In deciding that notice here was adequate the district court reached three conclusions: 1) the March 19 memorandum from Matthiessen's supervisor, Bea Luther, "sufficiently contained the reasons for the extension of her probation and the corrective measures that Matthiessen should pursue"; 2) the failure to send the notice by registered mail was not fatal because "a teacher's actual knowledge that his or her probation has been extended is enough to satisfy ¶ 24–11 [of the School Code]"; and 3) the Board's action at its March 21, 1985 meeting, where it voted "to extend Matthiessen's probation, effectively ratified the written notice given by Ms. Luther on March 19."

We agree with the district court's first conclusion and we do not believe that Matthiessen contends otherwise. Nevertheless, even if she actually challenged the sufficiency of the memorandum's contents, we believe that the format and information contained in Luther's March 19 memorandum is of the type that would satisfy paragraph 24–11 of the School Code. Paragraph 24–11 requires that a teacher in Matthiessen's position, that is a probation-

ary teacher placed on a third year of probationary status, be given notice that "state[s] the reasons for the one year extension and ... outline[s] the corrective actions which the teacher should take to satisfactorily complete probation." Ill. Ann.Stat. ch. 122, para. 24–11 (Smith–Hurd Supp.1988). The Illinois courts have infrequently addressed the sufficiency of a probation notice, but when they have the courts have done so with a certain flexibility in their approach, not wishing to unduly interfere in school affairs. This flexibility is a recognition that per se rules do not work well in this area, but instead the facts of an individual case determine the sufficiency of a particular notice. *Mann v. Board of Educ.,* ·82 Ill.App.3d 161, 37 Ill. Dec. 455, 457–58, 402 N.E.2d 345, 347–48 (1980). Of course minimum requirements must be met, and that minimum, as indicated in the statute, includes notice of deficiencies and of necessary corrective actions set out in such a manner that the teacher understands what it is he or she must do to successfully complete the probationary period and achieve a tenured position. This does not mean that specific methods for achieving the necessary goals must be listed. 37 Ill.Dec. at 458, 402 N.E.2d at 348. It simply means that the outline of corrective action required should contain sufficient detail to guide the teacher "in correcting any deficiencies within the extended year of probation." *Brunstrom v. Board of Educ.,* 52 Ill.App.3d 653, 10 Ill.Dec. 456, 457, 367 N.E.2d 1065, 1067 (1977). Here the deficiencies and corrective actions were set out in a single list of six items. Matthiessen was instructed to improve in such ways as staying in her class during class time, keeping information regarding students confidential, and going to her immediate supervisor with problems instead of to other staff members. This is at least as detailed as that found sufficient by the court in *Mann,* and therefore it passes muster under the School Code.

We also agree with the district court's second conclusion to the extent that it concluded that notice by means other than registered mail can be valid under Illinois law. *Glover v. Board of Education* held

that where a teacher was notified by means other than registered mail and had actual knowledge that his or her probationary period had been extended, the notice requirement had been satisfied. 62 Ill.2d 122, 340 N.E.2d 4, 6 (1976). At the time of the *Glover* decision, the notice statute required only that notice of probation be given. 340 N.E.2d at 5–6. Subsequently the statute was amended to require that both notice of probation and of corrective actions be given, which is the form of the statute today. According to Matthiessen the amendment gives renewed vitality to *Donahoo v. Board of Educ.*, 413 Ill. 422, 426, 109 N.E. 2d 787 (1952), which under an earlier version of the notice statute, somewhat similar to the current statute, had required that to be valid the notice must contain the reasons for termination. She also argues that the amendment undermines *Glover*. This argument misses the mark. The nub of the holding of *Glover* is that whatever is required in the notice to a teacher by registered mail under the statute may be satisfied by actual notice of those same required items; *Donahoo* holds the same, except in *Donahoo* the court made no pronouncement regarding the sufficiency of actual versus registered-mail notice. These holdings are unaffected by the several amendments of the statute. Therefore, looking both to *Glover* and *Donahoo*, actual notice of an extended probationary period, reasons for the extension, and corrective measures to be taken, as outlined in the current version of the statute, is sufficient notice under Illinois law.

Where we part ways with the district court is on that part of conclusion two where it decided that Matthiessen had received actual notice and on conclusion three where it decided that the Board had ratified the notice. We disagree with the district court because as to each of these conclusions a material issue of fact remains in dispute: did the superintendent meet with Matthiessen after the Board meeting and inform her of the reasons for probation and the corrective actions she need take? It is not contested that she had actual notice of probation: in her deposition Matthiessen testified that after the Board

meeting she knew that she was on probation. Nevertheless, without making a material fact determination there is no way to decide whether the superintendent told her the reasons for probation and the corrective actions to be taken. In her affidavit Matthiessen says that she does not remember meeting with the superintendent after the Board meeting. In his deposition the superintendent says that he met with Matthiessen after the meeting and told her what corrective actions she must take. Beatrice Luther, who the superintendent alleged was also at this meeting, said nothing in her affidavit regarding this meeting. This is a classic example of a controverted fact that can only be resolved by a trier of fact who is able to observe the witnesses, evaluate credibility, and decide who is the most believable. The district court seemed to believe the fact of this meeting was not material under the *Glover* reasoning because of Matthiessen's admission that she knew she was on probation. However, as we discussed above, for actual notice to suffice it must include notice of what the statute requires in the registered-letter notice, and the latest amendment to the statute requires notice of corrective measures, as well as the fact probation is extended. The *Glover* language results from the court's application of the actual notice rule to the statute in force at that time and does not affect the application of its actual-notice holding to the current version of the statute. The facts that are undisputed on this record only show that Matthiessen knew she was on probation. This falls short of the actual notice required by Illinois law.

The disputed nature of the post-Board meeting between the superintendent and Matthiessen, if it took place at all, and the lack of any other relevant evidence of ratification forecloses holding on summary judgment that the Board ratified the notice, as the district court decided in its third conclusion. The Board would like this court to find that ratification occurred because the statute requires that the Board, and not an administrator, make the decision regarding probation and transmit the no-

**410**

tice. Ratification allows the Board to claim the decision and notice-giving as its own and thereby satisfy the statute. Assuming that ratification is applicable in these circumstances, *see Collinsville Community Unit School Dist. No. 10 v. Witte*, 5 Ill. App.3d 600, 283 N.E.2d 718, 721 (1972), the Board has failed to demonstrate that that is what happened here. As we discussed above, what the superintendent said to Matthiessen after the Board meeting is controverted. His representation that he informed Matthiessen of the corrective measures and that these were the same as those outlined by Matthiessen's supervisor cannot be used to show ratification. Likewise, as to other evidence of ratification, there is nothing in the record showing that the Board specifically adopted the supervisor's particular pre-meeting recommendations and not just a portion or some other recommendations altogether. Evidence such as Board minutes or affidavits from those at the Board meeting that might tend to show that ratification occurred is not a part of the record here. It may be the case, as the Board represents, that the Board routinely accepts the recommendations of its administrators who are in the best position to judge the qualifications of school employees. Nevertheless, a mere assertion of routine, without more, is not enough to prove ratification in a motion for summary judgment. The trial judge may have arrived at the correct result, but the decision can only be reached with the aid of a jury and not as matter of law.

## III. CONCLUSION

The judgment of the district court is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.

Costs in this court are waived.

REVERSED.