Clarence WALKER, Plaintiff,

v.

Salvador GODINEZ, Walter Laseter, Ron Fleming, and Curtis Mode, Defendants.

No. 94 C 2545.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 13, 1995.

---

Clarence Walker, Joliet, IL, pro se.

Robert Shorey Graettinger, Illinois Attorney General's Office, Chicago, IL for defendants.

*MEMORANDUM OPINION AND ORDER*

ASPEN, Chief Judge:

Plaintiff Clarence Walker brings this pro se action under 42 U.S.C. § 1983 against Defendants Salvador Godinez, Warden of Stateville Correctional Center, and correctional officers Walter Laseter, Ron Fleming, and Curtis Mode. Walker alleges that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by being deliberately indifferent to his serious medical needs. Presently before us are the parties' cross-motions for sum-

mary judgment.[1] For the reasons set forth below, we deny the motions.

## I. Background

The plaintiff is a sixty-five year old inmate at Stateville, incarcerated in Stateville's "F House," a general inmate housing facility. Walker suffers from a number of medical problems, including asthma, emphysema, and diabetes. The plaintiff maintains that, on several occasions, correctional officers Laseter and Mode directly and persistently blew cigarette smoke into his face, causing violent asthma attacks requiring medical treatment. Walker further alleges that he orally reported these incidents to Warden Godinez and F House Superintendent Fleming.

### A. *Correctional Officer Laseter*

Specifically, Walker asserts that, on March 19, 1994, the plaintiff visited Laseter in the sergeant's office in F House; Laseter was acting sergeant at the time. According to Walker, he asked Laseter to call a medical technician to help Walker inject a daily insulin shot. Laseter allegedly ordered the plaintiff to leave the office, but Walker remained and insisted that Laseter call a medical technician.

Walker claims that Laseter replied, "I know how to get rid of you," lit a cigarette, and blew smoke in the plaintiff's face. Plaintiff's 12(N) at ¶ 10–11.[2] As Walker tried to evade the smoke, Laseter allegedly chased the plaintiff and yelled "die mother f——er die." Plaintiff's 12(N) at ¶ 10. An asthma attack allegedly gripped Walker, causing him to cough uncontrollably, gasp for air, and secrete mucus from his nose and mouth. Plaintiff's 12(N) at ¶ 10. Walker asserts that "[o]ther Staff members" called a medical technician, who administered "two breathing treatment[s]" to the plaintiff in order to restore normal breathing. Plaintiff's 12(N) at ¶ 11. The plaintiff's medical records from the prison Health Care Unit reveals that the

---

1. We note that the plaintiff has also filed a motion to obtain a copy of his first deposition in order to make corrections. Due to the plaintiff's evasiveness in answering questions at his first deposition, we permitted the defendants to depose him a second time. Because neither the parties nor this court refers to the plaintiff's first deposition, we deny Walker's motion to obtain a copy of that deposition.

2. Although Walker submitted a statement of facts under the label "Local Rule 12(M)" in support of his cross-motion for summary judgment, Walker also relied on the statement to oppose the defendants' motion for summary judgment. Accordingly, both parties later label the statement as a 12(N) submission, and we do the same.

medical technicians recorded one breathing treatment at 3:25 pm on March 19, 1994. Defendants' Resp. to 12(N) at ¶ 11.

According to Walker's deposition testimony, Laseter committed similar acts against the plaintiff two or three times. Plaintiff's Dep. at 37. Laseter denies ever blowing smoke in Walker's face. Defendants' 12(M) at ¶ 11.

### B. Correctional Officer Mode

As to Mode, Walker claims that, on March 10, 1994, the plaintiff was eating breakfast in the prison dining room when Mode sat down at the table. Mode allegedly lit a cigarette and began to blow smoke into Walker's face. Plaintiff's 12(N) at ¶ 12. Walker asserts that he asked Mode to leave the table; Mode refused, so Walker moved to another table. Plaintiff's 12(N) at ¶ 13. The plaintiff maintains that Mode followed him to the other table and continued to blow smoke at Walker's face. Plaintiff's 12(N) at ¶ 13. Walker claims to have suffered an asthma attack similar to the one induced by Laseter; the plaintiff coughed uncontrollably, gasped for air, and secreted mucus from his nose and mouth. Plaintiff's 12(N) at ¶ 13.

According to Walker, the correctional officers in the dining room permitted him to leave, and he returned to his cell in F House. Plaintiff's Dep. at 26–27; Plaintiff's 12(N) at ¶ 13–14. The plaintiff asserts that a Medical Technician was summoned and administered two breathing treatments. Plaintiff's 12(N) at ¶ 14. Walker's medical records from the prison Health Care Unit reveal that the medical technicians recorded three breathing treatments on March 10, 1994, administered at 1:55 am, 8:00 am, and 2:00 pm. Defendant's Resp. to 12(N) at ¶ 14.

Mode allegedly committed similar acts two more times. Plaintiff's Dep. at 29. Mode denies ever blowing smoke in Walker's face. Defendants' 12(M) at ¶ 10.

### C. Superintendent Fleming

Walker maintains that he reported the first incident involving Laseter to Fleming, the Superintendent of F House. Plaintiff's 12(N) at ¶ 8. According to the plaintiff, Fleming told Walker that "other inmates had told him [Fleming] the same thing about officer Laseter, ... but that he could not do anything because he did not see it happen." Plaintiff's 12(N) at ¶ 8. After Walker spoke with Fleming about Laseter, Laseter allegedly committed similar acts. Plaintiff's 12(N) at ¶ 8.

In addition, Walker testified at deposition that he reported the second incident involving Mode to Fleming. Plaintiff's Dep. at 28–29, 36. Mode allegedly committed one more similar act after reporting Mode to Fleming. Plaintiff's Dep. at 29.

Surprisingly, Fleming has not proffered an affidavit in response to Walker's assertions that the plaintiff reported Laseter and Mode to Fleming. Fleming simply responds that Walker failed to file formal grievances regarding the incidents. Defendants' 12(M) at ¶ 14.

### D. Warden Godinez

Walker claims that he reported the first incident involving Mode to Warden Godinez, and that Godinez replied that the warden would look into the matter. Plaintiff's 12(N) Aff. at ¶ 5; Plaintiff's Dep. at 28–29. Walker alleges that Godinez "did nothing" because Mode committed similar acts after the plaintiff spoke with Godinez. Plaintiff's 12(N) Aff. at ¶ 5. Similarly to Fleming, Godinez has not submitted an affidavit denying that Walker reported Mode to the warden.

### E. Cross–Motions

▇▇▇▇ Walker brought this action against the four defendants in their individual capacities only, seeking monetary damages and injunctive relief directed at the individual defendants.[3] Presently before the court are the parties' cross-motions for summary judgment. Although Walker's complaint and

---

**3.** The defendants curtly argue that the plaintiff sued the defendants in their official capacities only, and thus no monetary damages are available. Walker's complaint did not expressly identify in which capacity he was suing the defendants, but his briefs assert that he sues the defendants in their individual capacities only. Because we interpret pro se complaints liberally, *Wilson v. Civil Town of Clayton*, 839 F.2d 375, 378 (7th Cir.1988), we will deem the plaintiff's complaint as a suit against the defendants in their individual capacities only.

briefs present a theory of liability based on the defendants' deliberate indifference to his serious medical needs, Plaintiff's Complaint at ¶ 1, Plaintiff's Br. at 14–15, Plaintiff's Reply Br. at 3–5, the defendants recharacterize the plaintiff's theory as asserting excessive force claims.

The defendants contend that the undisputed facts show that Laseter and Mode never blew smoke in Walker's face. The defendants further argue that, even if the incidents did occur, any harm the plaintiff might have suffered was *de minimis* and did not rise to the level of a constitutional violation. Finally, Godinez and Fleming maintain that they had no personal responsibility for the alleged constitutional violations, and thus are entitled to summary judgment because supervisory liability does not exist under § 1983.

The plaintiff purports to combine his cross-motion for summary judgment with his response to the defendants' motion. In addition to his own affidavits, Walker points to numerous affidavits submitted by fellow Stateville inmates corroborating Walker's allegations. Because Walker's combined cross-motion and response is in fact only a response to defendants' motion, *see infra* Part II(D), we consider the defendants' motion first.

## II. Discussion

### A. *Standard for Summary Judgment*

■ Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact, and.... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.

R.Civ.P. 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991).

### B. *Laseter and Mode*

■ We note as an initial matter that, despite the defendants' attempt to reformulate the plaintiff's theory of the case, this court will refer to the law governing deliberate indifference to serious medical needs in deciding whether the defendants are entitled to summary judgment. Essentially, Walker argues that Laseter and Mode were deliberately indifferent to his serious medical need to avoid the alleged exposures to cigarette smoke, and that Fleming and Godinez were also personally responsible for the alleged incidents.[4]

■ A prisoner alleging that prison officials inflicted cruel and unusual punishment must prove both a subjective and objective component. *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991). In the context of medical needs, "deliberate indifference" satisfies the subjective component and a "serious" medical need satisfies the objective component. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

■ Recently, the Supreme Court expressly defined "deliberate indifference." *Farmer v. Brennan*, —— U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In *Farmer*, the Court held that a prison official acts with deliberate indifference if he or she acts with criminal recklessness. This state of mind, the Court explained, requires that the official " 'consciously disregar[d]' a substantial risk

---

4. The plaintiff's chosen theory provides for recovery if the defendants acted with deliberate indifference—that is, recklessness—as to his serious medical need, *see infra* Part II; had Walker chosen the excessive force theory, the plaintiff

could recover only if he proved that the defendants acted "maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992).

of serious harm." *Id.* at ——, 114 S.Ct. at 1980 (quoting Model Penal Code § 2.02(2)(c) (1985)). Thus, a showing of deliberate indifference to serious medical needs requires a showing of the official's actual awareness of a substantial risk of serious harm. *See id.* at ——, 114 S.Ct. at 1981.[5]

To determine whether the allegedly foregone medical need satisfies the objective component of the Eighth Amendment, we inquire whether, in light of " 'contemporary standards of decency,' " the medical need is " 'serious.' " *Hudson v. McMillian,* 503 U.S. 1, 8–9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) (quoting *Estelle v. Gamble,* 429 U.S. at 104, 97 S.Ct. at 291).

The defendants primarily argue that no reasonable factfinder could find that Laseter and Mode ever blew smoke in Walker's face; in the alternative, the defendants assert that any injury suffered by Walker was *de minimis.* Because the record is riddled with genuine issues of material fact, we deny the defendants' motion. First, the plaintiff detailed his version of the encounters with Laseter in three affidavits, and affidavits from seven other prisoners essentially corroborated the first incident with Laseter. Similarly, the plaintiff's trio of affidavits described Mode's actions, and affidavits from seven other prisoners supported Walker's story.[6] Although Laseter and Mode deny Walker's assertions, "summary judgment is not a procedure for resolving a swearing contest." *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir.1992). There exists a genuine issue whether Laseter and Mode ever blew smoke in the plaintiff's face.

Furthermore, we decline to hold that the plaintiff's alleged asthmatic attacks were *de minimis* or failed to constitute a "serious medical need" as a matter of law. On the record before us, the alleged exposures to cigarette smoke inflicted a violent asthmatic attack on Walker, who suffers from several pulmonary illnesses.[7] We refuse to conclude as a matter of law that Walker's purported medical need to be free from the alleged exposures is not "serious." [8]

Accordingly, we hold that genuine issues of material fact exist regarding whether Laseter and Mode blew smoke in Walker's face and whether Walker suffered a sufficiently "serious" deprivation.

### C. *Supervisory Liability*

Godinez and Fleming move for summary judgment on the additional ground that they had no personal responsibility for the alleged constitutional violations. "To be held liable for conduct of their subordinates, supervisors must have been personally involved in that conduct.... The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." [9] *Jones v.*

---

5. We should note that *Farmer* supports showing deliberate indifference by circumstantial proof. The Court in *Farmer* reminded courts that "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact *subject to demonstration in the usual ways, including inference from circumstantial evidence.*" —— U.S. at ——, 114 S.Ct. at 1981 (emphasis added).

6. It is true that on the dates of the first Mode and Laseter incidents, the medical technicians in the prison Health Care Unit recorded a number of breathing treatments different than the number Walker alleges he required. But the plaintiff's supporting affidavits point out that the breathing treatments after the incidents were not administered at the Health Care Unit, but rather in the plaintiff's cellhouse. In any event, a reasonable trier of fact could discount the medical technicians' recordings in favor of the plaintiff and the other prisoners' recollection.

7. Walker also submits a doctor's progress note, ordering the plaintiff to stay away from "cigarette smoking exposure." Plaintiff's Mot. for Summary Judgment, Exh. L–5. Although dated September 28, 1994, the reasonable inference is that Walker's long-term pulmonary conditions rendered the alleged cigarette smoke exposures medically harmful in March 1994.

8. Because Walker claims that the alleged exposures to cigarette smoke caused an *immediate* medical harm, we need not decide whether exposure to second-hand smoke, raising the risk of *future* medical harm, satisfies the Eight Amendment's objective component. *See Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).

9. We note that we speak here of "deliberate, reckless indifference" in the context of asking whether Godinez and Fleming are personally responsible for the unconstitutional conduct—a

*City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988) (quoted by *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir.1995)). At this stage of the litigation, Godinez and Fleming have proffered nothing to dispute the plaintiff's assertions that he reported Laseter to Fleming and Mode to both Godinez and Fleming. Nor do Godinez and Fleming deny Walker's assertions that they did nothing, a reasonable inference from the allegation that Laseter and Mode continued to commit similar acts. Because a reasonable factfinder could find that the two supervisors turned a "blind eye" to their subordinate's allegedly unconstitutional acts, Godinez and Fleming are not entitled to summary judgment on the basis of lack of personal involvement.

### D. *Plaintiff's Motion for Summary Judgment*

As the discussion above explains, there exist genuine issues of material facts regarding the defendants' liability. Laseter and Mode deny ever blowing smoke in the plaintiff's face; and if Laseter and Mode never committed the alleged acts, then Godinez and Fleming cannot be personally liable for those acts. Accordingly, we deny plaintiff's motion for summary judgment.

### E. *Appointment of Counsel*

As it appears that this case is proceeding to trial, we will appoint counsel pursuant to 28 U.S.C. § 1915(d).

### III. Conclusion

For the reasons set forth above, we deny both parties' motions for summary judgment. It is so ordered.

question about causation. This is a different question than whether Laseter and Mode acted with "deliberate indifference" to Walker's serious medical need—a question about the state of mind required by the Eighth Amendment.