Manion, Circuit Judge, dissenting.
 

 Eddie Bradley alleges he was summarily fired from his position as Chief of Police of the Village of University Park, Illinois. He says the mayor and the Village Board disregarded procedural protections enshrined in state law. If this is true, the conduct of the Village officials is quite troubling. Nevertheless, under prevailing Supreme Court and Seventh Circuit precedent, he has not pleaded a cognizable federal procedural due process claim. Therefore, the district court correctly dismissed his case.
 

 This case should be governed by the principle first set forth in
 
 Parratt v. Taylor
 
 ,
 
 451 U.S. 527
 
 , 541,
 
 101 S.Ct. 1908
 
 ,
 
 68 L.Ed.2d 420
 
 (1981), that "random and unauthorized" acts by a state actor resulting in the deprivation of property without adequate pre-deprivation process do not state a federal claim if the state provides an adequate post-deprivation remedy. Under Seventh Circuit precedent interpreting
 
 Parratt
 
 and its progeny, the actions of the mayor and the Village Board in Bradley's case were "random and unauthorized." Since Illinois provides a post-deprivation remedy through the State's Administrative Review Act, Bradley must pursue that relief rather than an action in federal court.
 

 The court today concludes otherwise. Because of its misapplication of Supreme Court precedent and divergence from our own, today's decision will create confusion for litigants and the district courts of our circuit, not to mention future panels of this court. In my view, we would do well to remain on the course we have been plotting for the past three decades. I respectfully dissent.
 

 I. Background
 

 Illinois law provides that, with some exceptions not relevant here, "no officer or member of the fire or police department of any municipality ... shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense." 65 ILCS 5/10-2.1-17. Bradley alleges the mayor and Village Board disregarded this requirement and summarily fired him. The district court held Bradley's federal procedural due process claim was barred by
 
 Parratt
 
 and he appealed.
 

 II. Discussion
 

 This case raises the question whether a claim may lie in federal court for the Village's violation of state procedural law. The court answers in the affirmative, holding that "[i]n cases alleging due process violations by municipal policymakers, there is no need to inquire separately into whether an employee's actions were 'random and unauthorized.' " Maj. Op. at 879. Such a conclusion is contrary to our precedent and results from a misapplication of Supreme Court case law.
 

 A. Supreme Court Decisions
 

 In general terms, the
 
 Parratt
 
 doctrine bars procedural due process claims resulting from random and unauthorized acts of state actors for which the State provides an adequate postdeprivation remedy. In
 
 Parratt
 
 , the plaintiff was an inmate who alleged he was deprived of his property without due process when prison employees lost $23.50 worth of hobby materials he had ordered.
 
 451 U.S. at 529
 
 ,
 
 101 S.Ct. 1908
 
 . The Supreme Court began its analysis of his claim by acknowledging:
 

 [I]n any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.
 

 Id.
 

 at 535
 
 ,
 
 101 S.Ct. 1908
 
 . Since the defendants in
 
 Parratt
 
 were state employees acting through their position of authority, the first question was clearly answered affirmatively: "the alleged conduct by the petitioners in this case satisfies the 'under color of state law' requirement."
 

 Id.
 

 Accordingly, the Court focused the remainder of its discussion almost entirely in terms of state employees as actors under color of state law.
 

 Regarding whether the plaintiff was denied due process, the Court reasoned it would be impracticable (and really, impossible) to guarantee a pre-deprivation hearing to everyone, as the State could hardly predict when such random incidents might occur.
 

 Id.
 

 at 540-41
 
 ,
 
 101 S.Ct. 1908
 
 . Thus, no pre-deprivation process is required in cases "involving a tortious loss of a prisoner's property as a result of a random and unauthorized act by a state employee."
 

 Id.
 

 at 541
 
 ,
 
 101 S.Ct. 1908
 
 . In such situations, post-deprivation process in state court is generally sufficient. The Court later clarified no federal due process action will lie for the intentional, random, and unauthorized deprivation of property by a state official unless the post-deprivation remedy is inadequate.
 
 Hudson v. Palmer
 
 ,
 
 468 U.S. 517
 
 , 533,
 
 104 S.Ct. 3194
 
 ,
 
 82 L.Ed.2d 393
 
 (1984).
 

 The Court subsequently limited
 
 Parratt
 
 's scope in
 
 Zinermon v. Burch,
 

 494 U.S. 113
 
 ,
 
 110 S.Ct. 975
 
 ,
 
 108 L.Ed.2d 100
 
 (1990). The plaintiff there alleged several doctors and administrators at a state hospital deprived him of liberty without due process when they admitted him as a voluntary mental patient even though he was incapable of consent. Rejecting the defendants' argument that
 
 Parratt
 
 barred the suit, the Court held the plaintiff had not alleged "unauthorized" conduct because "[t]he State delegated to [the defendants] the power and authority to effect the very deprivation complained of here ... and also delegated to them the concomitant duty to initiate the procedural safeguards set up by state law to guard against unlawful confinement."
 

 Id.
 

 at 138
 
 ,
 
 110 S.Ct. 975
 
 .
 
 Parratt
 
 , in the Court's view, involved an employee with "no similar broad authority to deprive prisoners of their personal property, and no similar duty to initiate
 (for persons unable to protect their own interests) the procedural safeguards required before deprivations occur."
 

 Id.
 

 So the deprivation was " 'unauthorized' only in the sense that it was not an act sanctioned by state law, but, instead, was a 'depriv[ation] of constitutional rights ... by an official's abuse of his position.' "
 

 Id.
 

 (quoting
 
 Monroe v. Pape
 
 ,
 
 365 U.S. 167
 
 , 172,
 
 81 S.Ct. 473
 
 ,
 
 5 L.Ed.2d 492
 
 (1961) ).
 

 Parratt
 
 and
 
 Hudson
 
 make it plain that the intentional deprivation of property resulting from the random and unauthorized act of a state actor will not create a federal cause of action unless the State does not provide an adequate post-deprivation remedy.
 
 Easter House v. Felder
 
 ,
 
 910 F.2d 1387
 
 , 1396 (7th Cir. 1990) (en banc),
 
 cert. denied
 
 ,
 
 498 U.S. 1067
 
 ,
 
 111 S.Ct. 783
 
 ,
 
 112 L.Ed.2d 846
 
 (1991). But
 
 Zinermon
 
 muddied the waters when it comes to the task of determining which acts are random and unauthorized.
 
 See
 

 id.
 
 at 1408 (Easterbrook, J., concurring) (arguing that
 
 Zinermon
 
 is fundamentally inconsistent with
 
 Parratt
 
 and
 
 Hudson
 
 ). It was left to this court to provide clarity.
 

 B. Seventh Circuit Decisions
 

 Just months after
 
 Zinermon
 
 , this court sitting
 
 en banc
 
 in
 
 Easter House
 
 did just that.
 
 [1]
 
 Easter House was an adoption agency that alleged employees of the Illinois Department of Children and Family Services conspired to deprive it of property without due process by, among other things, withholding the renewal of its license. We accepted the defendants' argument that
 
 Parratt
 
 barred Easter House's suit and rejected Easter House's three main arguments: (1) that
 
 Parratt
 
 applies only to minor deprivations; (2) that a conspiracy can never be a "random and unauthorized" act; and (3) that the actions of high-level policymaking employees are
 
 per se
 
 "authorized" because they amount to the policy or established procedure of the State.
 
 See
 

 id.
 
 at 1398 (majority opinion).
 

 The last of these is particularly relevant here. In rejecting that argument, we distinguished
 
 Zinermon
 
 on the grounds that the statute delegating authority in that case did not include procedural safeguards, meaning the state officials had "broadly delegated authority."
 
 Id.
 
 at 1401. In effect, we limited
 
 Zinermon
 
 's qualification of
 
 Parratt
 
 to situations where the state official in question had unfettered discretion to act. That much is clear from our statement that "we can envision a scenario where a high-ranking state official does exercise the authority and discretion to effect a deprivation, yet that discretion is 'circumscribed' by statutory or other predeprivation procedural safeguards."
 
 Id.
 
 at 1400. In such a case, we said, "an abuse of that discretion ... would not necessarily be 'predictable' from the point of view of the state and, according to
 
 Parratt
 
 and
 
 Zinermon
 
 , not compensable under § 1983."
 
 Id.
 
 Indeed, we went as far as to call the failure to cabin the officials' discretion in
 
 Zinermon
 
 a "statutory oversight."
 
 Id.
 
 at 1401. In short, Easter House's claim was barred because it alleged that state officials simply failed to heed the procedural
 safeguards contained in state law. The "licensing conspiracy was not one that the state could have predicted or, more importantly, prevented through the implementation of additional predeprivation procedural safeguards."
 
 Id.
 

 Further still, the
 
 en banc
 
 court rejected Easter House's related argument that the acts of certain high-ranking officials may be considered "established state procedure" and thus avoid the application of
 
 Parratt
 
 . Writing for the court, Judge Kanne framed the issue as "whether a single act of employee misconduct, which clearly contravenes established state policy and procedure as contained within formal rules, regulations, and statutes, automatically becomes the state's new position in all similar matters or whether the act, when viewed from the state's perspective, is merely a 'random and unauthorized' deviation."
 
 Id.
 
 at 1402. We chose the latter: Where there is a formal pronouncement of state policy (like a state statute) rather than case-by-case adjudication, even if a policymaker himself "deviates in a single instance from the more formal pronouncement, it is less likely to reflect a new trend in state policy and procedure."
 
 Id.
 
 at 1403.
 

 Thus,
 
 Easter House
 
 established that (1)
 
 Zinermon
 
 's limitation of the
 
 Parratt
 
 doctrine does not apply when state employees ignore procedural safeguards guaranteed under state law; and (2) when they violate state procedural statutes, even high-ranking officials can commit random and unauthorized acts from the perspective of the State. To put it differently, a wrongful decision may be predictable and authorized from the State's perspective only when state law does not cabin an official's discretion to grant pre-deprivation process.
 

 We have subsequently applied this rule to bar cases where the plaintiff alleges a violation of state procedural rules. In
 
 Clifton v. Schafer
 
 ,
 
 969 F.2d 278
 
 (7th Cir. 1992), the plaintiff alleged the director of the Lafayette County, Wisconsin, Department of Human Services intentionally deprived him of welfare benefits without a hearing even though the state Department ordered him not to do so. We held
 
 Easter House
 
 controlled: "Where established state policy would provide adequate predeprivation process, and that policy circumscribes the discretion of state officials to act, a single act of a state official-even a high-ranking state official-that violates that established policy is random and unauthorized from the state's perspective."
 

 Id.
 

 at 281-82 (citing
 
 Easter House
 
 ,
 
 910 F.2d at
 
 1400-03 ). It did not matter that the director in some sense had the power to take the action he took. What mattered was that "Wisconsin law circumscribed any discretion [the director] might have had over the decision to reduce Clifton's benefits."
 
 Id.
 
 at 282.
 

 In
 
 Germano v. Winnebago County
 
 ,
 
 403 F.3d 926
 
 (7th Cir. 2005), retirees from the County Sheriff's Department alleged that, contrary to Illinois law, the County through its board required them-without a pre-deprivation hearing-to pay higher health care premiums than current employees. We held
 
 Parratt
 
 and
 
 Easter House
 
 barred their federal procedural due process claim, writing that "the actions of Winnebago County were not authorized by the state; indeed, the actions were in direct violation of state law and should not be considered a basis for a due process claim."
 

 Id.
 

 at 929
 
 . "The county's decision to act contrary to this state law was not authorized and could not have been predicted or prevented by the state through any sort of predeprivation hearing."
 

 Id.
 

 The plaintiffs instead would have to seek a remedy in state court.
 

 Michalowicz v. Village of Bedford Park
 
 ,
 
 528 F.3d 530
 
 (7th Cir. 2008), reached the same result. There, a Village fire inspector
 alleged he was terminated without a proper pre- or post-deprivation hearing. He claimed his pre-deprivation hearing amounted to a summary termination and his post-deprivation hearing violated established law because it was conducted by the same board that had summarily terminated him.
 

 Id.
 

 at 533
 
 . Again, we held that because "state law afforded him the constitutional protection he alleges he was denied, any violation of that law by the Village must be considered random and unauthorized."
 

 Id.
 

 at 538
 
 . "Because such misconduct is inherently unpredictable, the state's obligation under the Due Process Clause is to provide sufficient remedies after its occurrence, rather than to prevent it from happening."
 

 Id.
 

 at 535
 
 . Michalowicz thus had to seek his remedy under the Illinois Administrative Review Act rather than in federal court.
 

 These cases and others
 
 [2]
 
 stand for the proposition that even high-ranking local and state officials like department directors and county and village boards commit random and unauthorized acts if they act contrary to established state law. That is precisely what happened in this case.
 

 C. Bradley's Case
 

 Bradley alleges he was fired from his position as Chief of Police of the Village of University Park without any process. But like the plaintiffs in
 
 Easter House
 
 ,
 
 Clifton
 
 ,
 
 Germano
 
 , and
 
 Michalowicz
 
 , he has not alleged the mayor and Village Board had unfettered discretion to fire him without a hearing. Rather, his complaint acknowledges the mayor and Board's actions as alleged would violate Illinois law. Put another way, he alleges the mayor and the Village Board did something that, as far as the State is concerned, was random and unauthorized. Nothing the legislature in Springfield could dream up could have stopped this conduct. Illinois law already "circumscribed any discretion [the Village actors] might have had over the decision" to fire Bradley without process.
 
 Clifton
 
 ,
 
 969 F.2d at 282
 
 . Therefore, Bradley's claim falls within the scope of
 
 Parratt
 
 and
 
 Easter House
 
 . So long as Illinois provides an adequate post-deprivation remedy, a § 1983 procedural due process claim will not lie.
 

 As in
 
 Michalowicz
 
 , the Illinois Administrative Review Act provides an adequate remedy for Bradley. We said in that case "the relief Michalowicz seeks-an independent review of whether the evidence supports his termination and whether the Village Board was biased or failed to follow the prescribed procedure in connection with his termination-falls squarely within the ambit of the Act, both through the state court's own review of the administrative record and through its authority to remand for rehearing."
 
 528 F.3d at 536
 
 . The fact that
 
 no hearing
 
 instead of a
 
 defective hearing
 
 occurred in this case does not change that outcome. If the state
 court believes more fact-finding is necessary, it can simply remand to the Village and order it to conduct a hearing. Therefore, I conclude the Administrative Review Act provides an adequate remedy.
 
 Parratt
 
 thus bars Bradley's federal procedural due process claim.
 

 D. The Court's Avoidance of
 
 Parratt
 

 The court's primary argument for avoiding
 
 Parratt
 
 is that the actions of high-ranking municipal decisionmakers render the municipality liable under
 
 Monell v. New York City Dep't of Social Services
 
 ,
 
 436 U.S. 658
 
 ,
 
 98 S.Ct. 2018
 
 ,
 
 56 L.Ed.2d 611
 
 (1978), and thus cannot be random and unauthorized under
 
 Parratt
 
 . Maj. Op. at 893-94. This conclusion, however, results from the conflation of two separate inquiries: (1) whether a municipality can be liable for a decision or action of a municipal employee, and (2) whether a deprivation effected by a person acting under color of state law was random and unauthorized by state law.
 
 Monell
 
 addressed the first question, holding that a municipality or other local government unit qualifies as a "person" within the meaning of § 1983,
 
 436 U.S. at 690
 
 ,
 
 98 S.Ct. 2018
 
 , and can be liable when it acts either through its established policy or through the actions of high-ranking policymakers,
 

 id.
 

 at 694
 
 ,
 
 98 S.Ct. 2018
 
 .
 
 Parratt
 
 and its progeny address the second question: whether a person acting under color of state law has acted in a way that was predictable and preventable by the State through additional pre-deprivation procedural safeguards, or whether, by contrast, the act was "random and unauthorized."
 
 Parratt
 
 ,
 
 451 U.S. at 541
 
 ,
 
 101 S.Ct. 1908
 
 .
 

 The court also contends that applying the
 
 Parratt
 
 exception to
 
 Monell
 
 claims would undermine public employees' constitutional due process protections, conflict with Supreme Court cases recognizing a state or local official may be liable under § 1983 for actions taken "under color of state law" even where the official's actions also violate state or local law, and conflict with
 
 Patsy v. Board of Regents
 
 ,
 
 457 U.S. 496
 
 ,
 
 102 S.Ct. 2557
 
 ,
 
 73 L.Ed.2d 172
 
 (1982), which held § 1983 plaintiffs need not exhaust state-law remedies before asserting their federal rights. Maj. Op. at 886. For the reasons explained below, none of these arguments avail.
 

 1. Interaction between
 
 Parratt
 
 and
 
 Monell
 

 Under
 
 Monell
 
 , the actions of a municipality's high-ranking decisionmakers can create official policy such that the municipality may be liable for § 1983 purposes.
 
 436 U.S. at 694
 
 ,
 
 98 S.Ct. 2018
 
 . According to the court's decision today, if a municipality is liable for its policymaker's actions under
 
 Monell
 
 , then
 
 Parratt
 
 by definition does not apply. This conclusion can only result, however, from an improper conflation of official municipal policy with established state procedures.
 

 In
 
 Monell
 
 , the Supreme Court overturned the portion of
 
 Monroe v. Pape
 
 that held Congress had not intended municipalities to qualify as "persons" under § 1983. Instead, the Court concluded "Congress
 
 did
 
 intend municipalities and other local government units to be included among those persons to whom § 1983 applies."
 

 Id.
 

 at 690
 
 ,
 
 98 S.Ct. 2018
 
 . In reaching this conclusion, the Court was careful to note a municipality cannot be vicariously liable for the actions of its employees under a respondeat superior theory; instead, the municipality can only be liable for its established policy
 
 or
 
 an action of a high-level policymaker "whose edicts or acts may fairly be said to represent official policy."
 

 Id.
 

 at 692-94
 
 ,
 
 98 S.Ct. 2018
 
 .
 

 Importantly, this test for municipal liability only determines whether the action
 of a particular municipal employee can be attributed to the municipality as its official policy.
 
 See
 

 Wilson v. Town of Clayton
 
 ,
 
 839 F.2d 375
 
 , 381 (7th Cir. 1988) ("[O]nce the officials who have authority to make policy for the Town are identified, their actions pursuant to that policy are attributable to the Town."). As the Supreme Court explained in
 
 Pembaur v. City of Cincinnati
 
 ,
 
 475 U.S. 469
 
 , 478,
 
 106 S.Ct. 1292
 
 ,
 
 89 L.Ed.2d 452
 
 (1986), "
 
 Monell
 
 is a case about responsibility. ... [It] make[s] clear that municipal liability is limited to action for which the municipality is actually responsible."
 
 Monell
 
 did not otherwise change the basis for liability under § 1983, which is expressly predicated on an action taken
 
 under color of state law
 
 .
 
 See
 

 42 U.S.C. § 1983
 
 . The statute provides a federal remedy only when there is a "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."
 
 Monroe
 
 ,
 
 365 U.S. at 184
 
 ,
 
 81 S.Ct. 473
 
 (quoting
 
 United States v. Classic
 
 ,
 
 313 U.S. 299
 
 , 325-326,
 
 61 S.Ct. 1031
 
 ,
 
 85 L.Ed. 1368
 
 (1941) );
 
 see also
 

 Screws v. United States
 
 ,
 
 325 U.S. 91
 
 , 109-113,
 
 65 S.Ct. 1031
 
 ,
 
 89 L.Ed. 1495
 
 (1945) (reaffirming the
 
 United States v. Classic
 
 definition of "under color of state law").
 

 Therefore,
 
 Monell
 
 takes us as far as the conclusion that the municipality is indeed a person acting under color of state law
 
 [3]
 
 when it acts through its high-ranking policymakers, and a municipal defendant may therefore be subject to liability under § 1983 for the actions of the municipality's high-ranking policymakers in the same way that a state employee or other actor under color of state law may be held liable under § 1983. However, reaching that conclusion does not mean there is no longer a need to examine whether the action taken under color of state law was random and unauthorized.
 

 While it is true that the actions in cases like
 
 Michalowicz
 
 and this one would certainly rise to the level of a municipal policy under
 
 Monell
 
 , such a policy would still be random and unauthorized as far as the
 
 State
 
 is concerned. Even the official policy of a municipality established through acts of high-ranking officials is unpredictable from the State's perspective if such policy contravenes established state procedures.
 
 See
 
 ,
 
 e.g.
 
 ,
 
 Germano
 
 ,
 
 403 F.3d at 929
 
 . As we said in
 
 Clifton
 
 , "a single act of a state official-even a high-ranking state official-that violates that established [state] policy is random and unauthorized from the state's perspective."
 
 969 F.2d at
 
 282 (citing
 
 Easter House
 
 ,
 
 910 F.2d at
 
 1400-03 ). This is especially true when the high-ranking official is a municipal official acting on behalf of the municipality as opposed to a high-ranking state official. We've applied this reasoning to a county board in
 
 Germano
 
 and a village board in
 
 Michalowicz
 
 . The decisionmakers in this case are not materially different from those.
 

 From the State of Illinois' perspective, the actions of the mayor and board of University Park-even though they are attributable to the municipality as its official policy under
 
 Monell
 
 -are no different than those of the employees in
 
 Easter House
 
 . They are actions by a "person" vested with power by the State, but actions that nonetheless violate established state procedures. These are precisely the sort of
 claims barred by
 
 Parratt
 
 and
 
 Easter House
 
 . It makes no difference whether the defendant is a high-ranking municipal employee creating municipal policy through his action or a state official acting with the authority imbued in his office by state law. The actions may still be random and unauthorized from the State's perspective if the defendant's authority has been circumscribed and regulated by state law.
 
 See
 

 Easter House
 
 ,
 
 910 F.2d at
 
 1402 ;
 
 Clifton
 
 ,
 
 969 F.2d at 281
 
 ("In
 
 Easter House
 
 , we emphasized that whether an act is random and unauthorized depends on the state's point of view, not the actor's.").
 

 The court dismisses this line of reasoning by asserting the State's perspective is irrelevant in cases where the State is not a defendant, and that "different rules of liability under § 1983 apply to municipalities making and carrying out their own policies." Maj. Op. at 892. This essentially construes
 
 Monell
 
 as creating a wholly new cause of action: one analogous to § 1983, but which holds municipal policymakers liable for actions taken under color of
 
 municipal policy
 
 in the same way that § 1983 holds actors liable for actions taken under color of
 
 state law
 
 . If that were the case, then it might be reasonable to look to the perspective of the municipality when determining if an action was random and unauthorized. This is not what
 
 Monell
 
 purported to accomplish, however, when it held that a municipality qualifies as a "person" under § 1983 and may be liable for the actions of high-level policymakers.
 
 [4]
 

 Moreover, the court's interpretation of
 
 Monell
 
 and § 1983 misses the essential "under color of state law" linchpin of § 1983. Once again, § 1983 provides a federal remedy for constitutional deprivations effected by a misuse of authority vested in the actor by the
 
 State
 
 .
 
 Monroe
 
 ,
 
 365 U.S. at 171-72
 
 ,
 
 81 S.Ct. 473
 
 ("Congress has the power to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity."). Even a
 
 Monell
 
 claim is presumptively predicated on the municipal defendant's misuse of the authority with which the
 
 State
 
 has clothed it.
 
 See
 

 Monell
 
 ,
 
 436 U.S. at 690
 
 ,
 
 98 S.Ct. 2018
 
 (holding "that Congress
 
 did
 
 intend municipalities and other local government units to be included among those persons to whom § 1983 applies," and reciting the "under color of state law" language of § 1983 );
 
 c.f.
 

 id.
 

 at 682
 
 ,
 
 98 S.Ct. 2018
 
 (discussing the legislative history of § 1983 to support the conclusion that § 1983 was intended to include municipalities and noting "there was no distinction of constitutional magnitude between officers and agents-including corporate agents-of the State").
 

 Thus, the State's perspective is preeminently relevant in determining whether that misuse of state-imbued authority was predictable and preventable through additional procedural safeguards.
 
 See
 

 Easter House
 
 ,
 
 910 F.2d at 1401
 
 (finding that the alleged deprivation "was not one that the state could have predicted or, more importantly, prevented through the implementation of additional predeprivation procedural safeguards.").
 

 In
 
 Parratt
 
 and
 
 Easter House
 
 , merely proving the prison officials and the state agency employees had caused deprivations without due process was not sufficient to
 impose liability where their actions were random and unauthorized. In the same way, proving via
 
 Monell
 
 that the Village policy created through the actions of the Mayor and the Board caused a deprivation without due process does not foreclose inquiry as to whether that municipal policy was random and unauthorized from the State's perspective.
 

 Whoever the "person" acting under color of state law is-be it a municipality via its policymakers, a prison official, a state agency, or someone else entirely-it is still necessary to determine if the State could have predicted and prevented the deprivation. If not, and if the State has provided sufficient post-deprivation remedies, then there is no justification to supplant the State's authority and subvert federalism by allowing the plaintiff to pursue a federal due process claim instead of the State's provided remedies.
 

 2. The applicability of
 
 Parratt
 
 to
 
 Monell
 
 claims in
 
 Wilson
 
 ,
 
 Breuder
 
 ,
 
 Matthiessen
 
 , and
 
 Tavarez
 

 The majority cites a collection of Seventh Circuit cases to support its conclusion that the
 
 Parratt
 
 exception is inapplicable to
 
 Monell
 
 claims. If read as the majority suggests, each of these cases represents the same mistaken conflation of
 
 Monell
 
 's municipal liability inquiry with
 
 Parratt
 
 's random and unauthorized acts inquiry. Three of these cases, however, were decided prior to the
 
 Easter House en banc
 
 decision:
 
 Tavarez v. O'Malley
 
 ,
 
 826 F.2d 671
 
 (7th Cir. 1987),
 
 Wilson v. Town of Clayton
 
 ,
 
 839 F.2d 375
 
 (7th Cir. 1988), and
 
 Matthiessen v. Board of Education
 
 ,
 
 857 F.2d 404
 
 (7th Cir. 1988). Thus, to the extent that those cases suggest a "narrower" construction of
 
 Parratt
 
 than that adopted by
 
 Easter House
 
 , their continuing status as good law is suspect.
 
 See
 

 Easter House
 
 ,
 
 910 F.2d at 1410-11
 
 (Cudahy, J., dissenting) (observing that
 
 Tavarez
 
 construed
 
 Parratt
 
 narrowly while the
 
 en banc
 
 majority in
 
 Easter House
 
 adopted a broad interpretation).
 
 [5]
 

 First, the majority cites
 
 Wilson v. Town of Clayton
 
 ,
 
 839 F.2d at 380-82
 
 , for the propositions that (1) a single decision by a municipality's highest decisionmakers is attributable to the municipality as "policy" under
 
 Monell
 
 , and (2) such a decision, by definition, cannot be random and unauthorized under
 
 Parratt
 
 . As explained above, I have no quarrel with the first of these statements; there is no doubt that an action of the Village Board or the mayor may be the policy of the Village under
 
 Monell
 
 .
 
 Pembaur
 
 ,
 
 475 U.S. at 479-81
 
 ,
 
 106 S.Ct. 1292
 
 . But, as I have demonstrated, the second proposition is incorrect. While such a decision would not be random and unauthorized from the Village's perspective, it could be so with respect to the State if state law circumscribes the discretion of the Village actors.
 
 Michalowicz
 
 ,
 
 528 F.3d at 535
 
 , 538 ;
 
 Germano
 
 ,
 
 403 F.3d at
 
 929 ;
 
 Clifton
 
 ,
 
 969 F.2d at 282
 
 .
 

 Regardless,
 
 Wilson
 
 is distinct from both the present case and
 
 Easter House
 
 , because in
 
 Wilson
 
 , there was no state law to circumscribe the Town officials' discretion. The plaintiff complained Town officials conspired to destroy his business, but the
 
 Wilson
 
 court cited no state statute or procedural rule which had been violated.
 
 Wilson
 
 , then, appears to be one of the
 
 Zinermon
 
 species of cases, where the employees in question were acting with unfettered discretion and deprived the plaintiff of due process in a predictable way that could have been avoided through procedural protections. If it is not interpreted this way, then it conflicts with
 
 Easter House
 
 .
 

 The court next cites
 
 Breuder v. Board of Trustees of Community College District No. 502
 
 ,
 
 888 F.3d 266
 
 , 271 (7th Cir. 2018), for the proposition that a decision made by a body's governing board cannot be random and unauthorized. The court goes so far as to say
 
 Breuder
 
 "squarely rejected a reading of
 
 Parratt
 
 identical to the village's argument here." Maj. Op. at 895. However, in
 
 Breuder
 
 , we expressly acknowledged that the defendants "ha[d] not contended that the process due for a summary termination is the opportunity to sue in state court."
 
 888 F.3d at 270-71
 
 . Thus, a
 
 Parratt
 
 argument was not properly before the court in
 
 Breuder
 
 because the defendants did not argue it.
 

 Even though the argument was not presented or developed by the defendants, we suggested that "[w]hen the decision is made by a body's governing board,
 
 it would be hard to contend
 
 that the action is random and unauthorized for the purpose of
 
 Parratt
 
 ... and its successors."
 

 Id.
 

 at 271
 
 (emphasis added). This statement may indeed be understood to suggest the relevant inquiry is whether an action is random and unauthorized from the perspective of the actor (e.g., a body's governing board) rather than the State. However, given that the defendants did not present or develop a
 
 Parratt
 
 argument in
 
 Breuder
 
 , it was unnecessary for the court to address this issue, and thus this statement is a mere dictum.
 
 See
 

 United States v. Crawley
 
 ,
 
 837 F.2d 291
 
 , 292-93 (7th Cir. 1988) (describing as dictum a passage that "was unnecessary to the outcome of the earlier case and therefore perhaps not as fully considered as it would have been if it were essential to the outcome," or where "the issue addressed ... was not presented as an issue, hence was not refined by the fires of adversary presentation"). In any event, the non-absolute language used does not unequivocally create a
 
 per se
 
 rule that a decision by a body's governing board can
 
 never
 
 be random and unauthorized.
 

 Even more fundamentally, as I have already described, if
 
 Breuder
 
 is read to mean that the actor's perspective is the relevant perspective for determining whether an action is random and unauthorized, it would conflict with
 
 Easter House
 

 ,
 

 Germano
 
 , and
 
 Michalowicz
 
 . It would also misunderstand the reasoning and undermine the purpose of the
 
 Parratt
 
 exception: that the State's role in providing due process should only be supplanted by federal courts when the deprivation caused by an actor clothed with state authority was predictable and preventable by the State, or where the State has not provided adequate post-deprivation remedies.
 
 See
 

 Easter House v. Felder
 
 ,
 
 879 F.2d 1458
 
 , 1470 (7th Cir. 1989) (en banc) (describing
 
 Parratt
 
 's purpose as "discouraging the use of section 1983 as a supertort remedy to supplant existing state remedial procedures"),
 
 vacated on other grounds
 
 ,
 
 494 U.S. 1014
 
 ,
 
 110 S.Ct. 1314
 
 ,
 
 108 L.Ed.2d 490
 
 (1990) (mem.).
 

 Furthermore, as with
 
 Wilson
 
 , the outcome of
 
 Breuder
 
 squares perfectly with
 
 Easter House
 
 's explanation of
 
 Parratt
 
 ,
 
 Hudson
 
 , and
 
 Zinermon
 
 : where an actor under color of state law is granted discretion
 to cause a deprivation and such discretion is not circumscribed or regulated by state law, then his actions are not random and unauthorized from the perspective of the State. The board in
 
 Breuder
 
 was not constrained by any procedural requirements that it provide the dismissed college president a pretermination hearing, but rather had unfettered discretion to act under state law. There is no doubt that a decision made by a governing board to terminate an employee without a hearing would not be "unauthorized" in the absence of any state law requiring such a hearing. Therefore,
 
 Breuder
 
 is not inconsistent with the general rule we established in
 
 Easter House
 
 . Where state law does not constrain an actor's discretion, a procedural due process claim in federal court may lie. That is not the case here, however.
 

 Next, the majority cites
 
 Matthiessen v. Board of Education
 
 ,
 
 857 F.2d 404
 
 (7th Cir. 1988). In
 
 Matthiessen
 
 , a teacher was terminated by a school board without being afforded the procedural protections to which she would have been entitled under state law if she were a tenured teacher. The school board raised
 
 Parratt
 
 before the district court and on appeal, prompting us to discuss the application of
 
 Parratt
 
 in a footnote of that opinion.
 

 Id.
 

 at 407 n.3.
 
 [6]
 
 The court in
 
 Matthiessen
 
 held the school board's action was not random and unauthorized under either a "narrow" or "broad" reading of
 
 Parratt
 
 . In so doing, however, the court unjustifiably ignored the difference between official municipal policy (as enacted by a high-ranking policymaker) and established state procedure, asserting "the single act of a sufficiently high-ranking policymaker may equate with or be deemed established
 
 state procedure
 
 ."
 

 Id.
 

 (emphasis added). The
 
 Matthiessen
 
 court cited
 
 Wilson
 
 's definition of "official policy" under
 
 Monell
 
 for this proposition, even though
 
 Wilson
 
 does not claim that municipal policy and state procedure are one and the same, and in fact correctly summarizes the municipal liability holding of
 
 Monell
 
 and
 
 Pembaur
 
 by stating simply: "once the officials who have authority to make policy for the Town are identified, their actions pursuant to that policy
 
 are attributable to the Town
 
 ."
 
 Wilson
 
 ,
 
 839 F.2d at 381
 
 (emphasis added). As I have described, conflating
 
 Monell
 
 's test for municipal liability with
 
 Parratt
 
 's test for random and unauthorized acts misconstrues both cases.
 

 Matthiessen
 
 's misapplication of
 
 Monell
 
 and
 
 Parratt
 
 should not be considered binding on this court for two reasons. First, the
 
 Matthiessen
 
 decision focused primarily on the alternative issue of whether Matthiessen was tenured, confining the entire discussion of
 
 Parratt
 
 to a single footnote. Even within that discussion, the conclusion that Matthiessen's claim would fail under a "broad" reading of
 
 Parratt
 
 was in the alternative to its initial conclusion embracing a "narrow" reading.
 
 Matthiessen
 
 ,
 
 857 F.2d at
 
 407 n.3 ;
 
 see also
 

 Crawley
 
 ,
 
 837 F.2d at 292
 
 (noting that a passage in a prior opinion may not be entitled to binding weight when it "was not an integral part of the earlier opinion").
 

 Second, and more importantly, this court sitting
 
 en banc
 
 in
 
 Easter House
 
 called into question
 
 Matthiessen
 
 's conclusion that the plaintiff's claim would fail "even under the
 broad reading" of
 
 Parratt
 
 .
 
 Easter House
 
 directly quoted
 
 Matthiessen
 
 's problematic assertion that "a single act of a sufficiently high-ranking policymaker may equate with or be deemed established state procedure," and then pointed out that "in the
 
 Parratt
 
 analysis, this means nothing more than an employee acts under color of state law during the performance of his job-related duties."
 
 Easter House
 
 ,
 
 910 F.2d at 1402
 
 . Thus,
 
 Easter House
 
 implicitly recognized that
 
 Matthiessen
 
 's holding could only have been based on a reading of
 
 Parratt
 
 which the
 
 en banc
 
 majority chose not to follow.
 
 [7]
 

 Finally, the majority cites
 
 Tavarez v. O'Malley
 
 ,
 
 826 F.2d 671
 
 (7th Cir. 1987), for the same proposition that the highest decisionmakers of a municipality cannot avoid liability for their decisions under
 
 Parratt
 
 .
 
 [8]
 
 The
 
 Tavarez
 
 opinion also seems to improperly conflate official municipal policy with established state procedure, stating "we cannot say" the deprivation was not the result of "an established state procedure" because the defendants "appear to be the senior county and town officials (respectively) who have the practical if not the legal authority to establish procedures for dealing with hazardous premises."
 

 Id.
 

 at 677
 
 . But the fact that the defendants were able to establish official policy for the
 
 county
 
 and
 
 town
 
 (respectively) does not mean they had the power to establish
 
 state
 
 procedure. Nor does it follow that their acts attributable to the county and town as official policy were not random and unauthorized by the State which clothed the county and town with authority.
 

 Even so, as with
 
 Wilson
 
 and
 
 Breuder
 
 , the outcome of
 
 Tavarez
 
 is consistent with the rule espoused by
 
 Easter House
 
 : that a federal due process claim may be brought where the State confers broad, unfettered discretion to the actor. There were two municipal officials responsible for the deprivation in
 
 Tavarez
 
 : a county official and a town official. The district court had concluded the actions of the officials were unauthorized not because they contravened a state law limiting their authority, but simply because the county and town did not have express policies causing the kind of deprivation at issue.
 
 [9]
 
 As in
 
 Wilson
 
 ,
 the court in
 
 Tavarez
 
 cited no state statute or procedural rule that had been violated. Indeed, the court referred to the officials' acts as "
 
 ultra vires
 
 conduct,"
 

 id.
 

 at 677
 
 , only because "no state or local law authorized" the deprivation,
 

 id.
 

 at 674-75
 
 . There is no indication in
 
 Tavarez
 
 that the discretionary authority granted to the county and town by the State was circumscribed or regulated by the State at all.
 

 In sum,
 
 Monell
 
 's test for determining whether a high-ranking official's actions amount to official policy such that they are attributable to the municipality is and should be maintained as a separate inquiry from
 
 Parratt
 
 's question of random and unauthorized acts. The former focuses on the relationship between a municipality and its high-ranking official and answers whether the municipality may be liable for an act.
 
 See
 

 Pembaur
 
 ,
 
 475 U.S. at 479-80
 
 ,
 
 106 S.Ct. 1292
 
 (explaining that
 
 Monell
 
 's holding is "intended to distinguish acts of the
 
 municipality
 
 from acts of
 
 employees
 
 of the municipality" and limits liability to "action[s] for which the municipality is actually responsible"). The latter focuses on the relationship between the State and a person clothed with state authority and answers whether the State could have predicted or prevented a deprivation caused by such a person.
 
 See
 

 Easter House
 
 ,
 
 910 F.2d at 1399
 
 .
 

 Even if some of this circuit's pre-
 
 Easter House
 
 cases and those of other circuits seemingly confuse these two inquiries (in contrast to our more recent cases properly separating the inquiries and focusing on the State's perspective instead of the actor's, such as
 
 Germano
 
 and
 
 Michalowicz
 
 ), we should not completely eradicate that distinction as the court does today by proclaiming indelibly that
 
 Parratt
 
 is simply irrelevant to all
 
 Monell
 
 -type claims.
 

 The fact that the mayor and Village Board's actions may represent the Village's official policy under
 
 Monell
 
 does not mean those actions were not random and unauthorized from the State of Illinois' perspective.
 

 3. Relevance of
 
 Germano
 
 and
 
 Michalowicz
 

 I must also address the court's attempt to distinguish two cases which stand in the way of its claim that
 
 Parratt
 
 is wholly inapplicable to
 
 Monell
 
 claims. Both cases follow logically from the holding of
 
 Easter House
 
 and a proper understanding of the inquiries in
 
 Monell
 
 and
 
 Parratt
 
 , and both are much more recent than
 
 Tavarez
 
 ,
 
 Wilson
 
 , and
 
 Matthiessen
 
 .
 

 The court attempts to distinguish the 2005 decision in
 
 Germano
 
 primarily because the decision did not cite
 
 Monell
 
 or any of the pre-
 
 Easter House
 
 cases that seem to mistakenly conflate the
 
 Monell
 
 and
 
 Parratt
 
 inquiries. Maj. Op. at 894 n.6. But the lack of citation to
 
 Monell
 
 does not change the fact that the municipality's liability was expressly predicated on the understanding that the actions of its county board were attributable to the county itself.
 
 Germano
 
 ,
 
 403 F.3d at 928
 
 .
 
 Monell
 
 was not cited in
 
 Germano
 
 because we assumed the county was responsible for the actions of its board without needing to engage in an in-depth analysis of the question. Indeed, the county even conceded the alleged deprivation occurred because of "the action taken by [the county] ... under the color of state law."
 

 Id.
 

 at 927
 
 .
 

 Furthermore, the obviousness of the county's responsibility for the acts of its board only strengthens the argument that it is the
 
 state's perspective
 
 that is relevant in determining whether the municipality's act was random and unauthorized, not the municipality's own perspective. The court in
 
 Germano
 
 rejected the plaintiff's attempt to focus on the county's perspective and instead focused properly on the State's perspective.
 

 Id.
 

 at 928
 
 . Immediately assuming the county was responsible for its board's actions, the court stated "even if the county is permitted to exercise some discretion ..., the discretion is not unregulated. A county only has discretion to act in a way that is consistent with state law."
 

 Id.
 

 (internal citation omitted).
 

 The court then invoked the reasoning of
 
 Easter House
 
 : "Germano, like the plaintiff in
 
 Easter House
 
 , 'points to nothing which would indicate that
 
 the state
 
 knew or should have known that the appellants ... had disregarded, or were likely to disregard
 
 the state's established procedure
 
 .' "
 

 Id.
 

 (emphasis added). Thus, even attributing the acts of the county board directly to the county itself, the court concluded:
 

 [T]he actions of Winnebago County were not authorized by the state; indeed, the actions were in direct violation of state law and should not be considered a basis for a due process claim. ... The county's decision to act contrary to ... state law was not authorized and could not have been predicted or prevented by the state through any sort of predeprivation hearing.
 

 Id.
 

 at 929
 
 .
 
 Germano
 
 is therefore directly on point and thoroughly refutes the majority's contention that
 
 Parratt
 
 is inapplicable in
 
 Monell
 
 -type cases.
 

 The majority attempts to distinguish
 
 Michalowicz
 
 by asserting "[t]he crux of the case was that the plaintiff was trying to enforce under the United States Constitution a particular detail of state or local procedural law." Maj. Op. at 897. The majority asserts it was only the "specific kind of procedural missteps" at issue in Michalowicz's case that were "inherently unpredictable," as opposed to constitutional violations of due process that are also violations of state law.
 

 Id.
 

 The analysis in
 
 Michalowicz
 
 , however, which directly applied
 
 Parratt
 
 to the acts of the municipality, reveals no such limitation:
 

 "Michalowicz ... claims he was denied due process [by the Village's allowance of a biased post-termination hearing]. This species of due-process claim is a challenge to the "random and unauthorized" actions of the state officials in question, i.e., to their unforeseeable misconduct in failing to follow the requirements of existing law. Because such misconduct is inherently unpredictable, the state's obligation under the Due Process Clause is to provide sufficient remedies after its occurrence, rather than to prevent it from happening."
 

 Michalowicz
 
 ,
 
 528 F.3d at 534-35
 
 (internal citations omitted).
 

 Amid this analysis,
 
 Michalowicz
 
 quoted
 
 Doherty v. City of Chicago
 
 ,
 
 75 F.3d 318
 
 (7th Cir. 1996), a case that also applied the
 
 Parratt
 
 -
 
 Hudson
 
 "random and unauthorized act" exception to the acts of municipal employees, and which did not hinge on a mere violation of local procedural law that was not a constitutional violation.
 
 Michalowicz
 
 also cited
 
 Easter House
 
 's discussion of
 
 Parratt
 
 ,
 
 Hudson
 
 , and
 
 Zinermon
 
 when discussing the "species of due-process claim" at issue. Identifying the claim in
 
 Michalowicz
 
 as being of the same "species" as the claims in those cases-which each involved violations of constitutional magnitude and not mere "procedural missteps"-would make no sense if the
 
 Michalowicz
 
 court intended to limit the opinion's reach to violations of state procedure
 which were not also constitutional violations. Nothing in
 
 Michalowicz
 
 suggests the kind of narrow, close-cut ruling the majority ascribes to it.
 

 The
 
 Michalowicz
 
 court did not base its decision on any conclusion that Michalowicz had not alleged a substantial deprivation of due process that rose to the level of a federal claim.
 
 [10]
 
 Indeed, the court did not pass on the merits of his claim at all. It said only that the actions he complained of were random and unauthorized and that his remedy lies in state, not federal, court.
 
 Id.
 
 at 538. The substance of Bradley's claim compared to Michalowicz's is simply irrelevant under the
 
 Parratt
 
 doctrine.
 

 4. Alleged conflict with Supreme Court precedent
 

 Lastly, the court presents a parade of horribles that would result from applying
 
 Parratt
 
 in this case. It suggests such a holding would undermine public employees' constitutional due process protections and conflict with longstanding Supreme Court precedent allowing municipal officials to be held liable under § 1983 for acts representing official municipal policy. Maj. Op. at 898-99. The thrust of these arguments is that applying the
 
 Parratt
 
 exception to actions of municipal officials as representatives of the municipality would eliminate municipal liability under § 1983 and would eviscerate public employees' due process protections.
 

 As I have already explained in detail, however, a proper understanding of the
 
 Monell
 
 municipal-liability inquiry and the
 
 Parratt
 
 random-and-unauthorized-acts inquiry demonstrates that the one does not foreclose the other. Rather than engage in further refutation of these contentions, I will simply point to
 
 Easter House
 
 's binding interpretation of
 
 Parratt
 
 and
 
 Zinermon
 
 as the answer to the court's concerns. Applying
 
 Parratt
 
 to
 
 Monell
 
 -type claims would no more eliminate public employees' procedural protections or municipal liability under § 1983 than
 
 Easter House
 
 's rule eliminates due process claims against all state agency employees. Instead, where the State has conferred broad, unfettered discretion on an actor (whether that actor is a state employee, municipality, or other person), a deprivation committed by that actor cannot be said to be random and unauthorized. In such a case, the State could predict the deprivation would occur and could have prevented it through additional procedural safeguards. That was the case in
 
 Zinermon
 
 and, as I have pointed out, in
 
 Tavarez
 
 ,
 
 Wilson
 
 , and
 
 Breuder
 
 . That was not the case, however, in
 
 Easter House
 
 ,
 
 Germano
 
 , or
 
 Michalowicz
 
 ; nor is it Bradley's case.
 

 The court's additional concern that applying
 
 Parratt
 
 to this case would conflict with
 
 Patsy v. Board of Regents
 
 ' holding that a § 1983 plaintiff need not exhaust her state administrative remedies before bringing a federal claim,
 
 457 U.S. at 516
 
 ,
 
 102 S.Ct. 2557
 
 , is similarly unfounded.
 
 Patsy
 
 was not a
 
 Parratt
 
 -type case:
 
 Parratt
 
 dealt with and created an exception applying only to certain kinds of procedural due process claims, while
 
 Patsy
 
 was concerned more generally with constitutional deprivations under § 1983 (the specific claim at issue in
 
 Patsy
 
 was sex discrimination).
 

 Id.
 

 at 498
 
 ,
 
 102 S.Ct. 2557
 
 . Applying
 
 Parratt
 
 in this case would be no more inconsistent with
 
 Patsy
 
 than
 
 Parratt
 
 itself is-or
 
 Easter House
 
 , for that matter.
 
 [11]
 

 In short, a consistent application of
 
 Parratt
 
 regardless of who the actor under color of state law is would harmonize, not disrupt, Supreme Court precedent.
 

 III. Conclusion
 

 Since our
 
 en banc
 
 decision in
 
 Easter House
 
 , the law of this circuit has been clear: an individual deprived of property without pre-deprivation process by the random and unauthorized act of a state actor may not maintain a due process action in federal court so long as the State provides an adequate post-deprivation remedy. Whether that state actor is a municipality or some other person clothed with authority by the State does not change the essential inquiry of whether the act was predictable and preventable by the State. We had a chance 28 years ago to adopt the broader reading of
 
 Zinermon
 
 that Judge Cudahy and others
 
 [12]
 
 advocated, but we rejected it. Today, the court seeks to change direction. Yet we are now bound by
 
 Easter House
 
 . Under that decision-and with a proper understanding of municipal liability under
 
 Monell
 
 and the relevance of the State's perspective under
 
 Parratt
 
 -the outcome of this case is clear: Bradley cannot maintain a due process claim in federal court.
 

 Contrary to the court's concerns, the failure of Bradley's federal claim does not mean he has no opportunity for redress. If Bradley's allegations are true, he will have a remedy under the Illinois Administrative Review Act. We presume that "state courts are fully competent to adjudicate constitutional claims,"
 
 Doran v. Salem Inn, Inc.
 
 ,
 
 422 U.S. 922
 
 , 930,
 
 95 S.Ct. 2561
 
 ,
 
 45 L.Ed.2d 648
 
 (1975), so we should trust them to enforce state procedural law.
 

 Today's decision undermines federalism, embraces a misunderstanding of the separate inquiries established by
 
 Monell
 
 and
 
 Parratt
 
 , and will sow confusion among the lower courts by muddying the clear waters of
 
 Easter House
 
 and its progeny. I would instead affirm the judgment below.
 

 I respectfully dissent.
 

 In
 
 Easter House
 
 , the panel, over a dissent from Judge Kanne, originally held
 
 Parratt
 
 inapplicable.
 
 Easter House v. Felder
 
 ,
 
 852 F.2d 901
 
 (7th Cir. 1988). We then granted rehearing
 
 en banc
 
 and went the other way, holding over a dissent from Judge Cudahy that Easter House's claim was barred by
 
 Parratt
 
 .
 
 879 F.2d 1458
 
 (7th Cir. 1989) (en banc). The Supreme Court granted Easter House's petition for certiorari, vacated our judgment, and remanded the case back to the
 
 en banc
 
 court in light of
 
 Zinermon
 
 .
 
 494 U.S. 1014
 
 ,
 
 110 S.Ct. 1314
 
 ,
 
 108 L.Ed.2d 490
 
 (1990) (mem.). On remand, we came out the same way, with only Judge Posner switching his vote from the majority to the dissent.
 
 910 F.2d 1387
 
 (7th Cir. 1990) (en banc). It is the
 
 en banc
 
 opinion on remand that is controlling today.
 

 See, e.g.
 
 ,
 
 Strasburger v. Bd. of Educ.
 
 ,
 
 143 F.3d 351
 
 , 358 (7th Cir. 1998) ("[W]hat [the plaintiff] complains of is a conspiracy by state officials to deprive him of a state-created property interest. The State of Illinois should have the first chance to assess the alleged violations of its own laws.");
 
 Veterans Legal Defense Fund v. Schwartz
 
 ,
 
 330 F.3d 937
 
 , 941 (7th Cir. 2003) (actions of the Illinois Secretary of State and the Director of the Illinois Department of Central Management Services were random and unauthorized because "[o]nly by acting in a manner patently inconsistent with Illinois law, could the defendants deprive the plaintiffs of the [veterans] hiring preference");
 
 Leavell v. Ill. Dep't of Natural Resources
 
 ,
 
 600 F.3d 798
 
 , 806 (7th Cir. 2010) ("[B]ecause Ms. Leavell simply alleges that the State had in place a procedure to provide notice and that the procedure was not followed with respect to the February 2008 hearing, she is complaining of a 'random and unauthorized' action by a state employee.").
 

 Since "[m]unicipal corporations are mere creatures of the legislative will, and can exercise no powers except such as the State has conferred upon them,"
 
 Zanone v. Mound City
 
 ,
 
 103 Ill. 552
 
 , 556 (1882), there is little question that execution of a municipality's official policy or the act of a sufficiently high-ranking policymaker is an act taken "under color of state law," in much the same way that a state employee acting within the scope of his employment is acting under color of state law,
 
 see
 

 Parratt
 
 ,
 
 451 U.S. at 535
 
 ,
 
 101 S.Ct. 1908
 
 .
 

 The Sixth Circuit has rejected the argument that an established "policy or custom" under
 
 Monell
 
 automatically renders
 
 Parratt
 
 inapplicable, pointing out that this confuses the separate inquiries of
 
 Monell
 
 and
 
 Parratt
 
 .
 
 Vinson v. Campbell Cty. Fiscal Court
 
 ,
 
 820 F.2d 194
 
 , 199 (6th Cir. 1987). The Eleventh Circuit has likewise recognized a distinction between a "policy or custom" under
 
 Monell
 
 and "established state procedure" under
 
 Parratt
 
 .
 
 Rittenhouse v. DeKalb County
 
 ,
 
 764 F.2d 1451
 
 , 1456 n.5 (11th Cir. 1985).
 

 The majority also cites
 
 Vodak v. City of Chicago
 
 ,
 
 639 F.3d 738
 
 (7th Cir. 2011), averring we there "disparaged [a] similar attempt[ ] to evade municipal liability, dismissing as 'extravagant' a claim that the 'acts of [a] Mayor ... are merely acts of an errant employee.' " Maj. Op. at 886. In actuality, however,
 
 Vodak
 
 rejected the "extravagant claim that the only officials whose tortious conduct can
 
 ever
 
 impose liability on it are the members of the City Council acting through their ordinances."
 
 Vodak
 
 ,
 
 639 F.3d at 747
 
 (emphasis in original). Viewed in context, the issue was not whether a particular action was random and unauthorized (the opinion does not cite
 
 Parratt
 
 or
 
 Hudson
 
 at all); rather, it was whether any action by a policymaker could
 
 ever
 
 be attributed to the municipality. Obviously, under
 
 Monell
 
 and
 
 Pembaur
 
 , the answer is yes; but that still leaves unanswered the question of whether that municipal action was random and unauthorized by
 
 state law
 
 .
 

 Matthiessen
 
 's discussion of the applicability of the
 
 Parratt
 
 exception was confined entirely to a single (though lengthy) footnote. This is because the court's decision focused primarily on whether the plaintiff-teacher was tenured under Illinois law, which was necessary for her entitlement to procedural protections. The district court had dismissed the case based on its holding that she was not tenured, and therefore no due process violation had occurred. We reversed that holding.
 
 Matthiessen
 
 ,
 
 857 F.2d at 405
 
 .
 

 Even if
 
 Matthiessen
 
 's conflation of official municipal policy with established state procedure is considered binding post-
 
 Easter House
 
 , however, it represents an aberration that misapplies Supreme Court precedent and creates an intracircuit conflict with more recent decisions of this court.
 
 See infra
 
 Section II.D.3. The court should repair our precedent by denouncing that incorrect reasoning, rather than embracing it.
 
 See
 

 U.S. v. Welton
 
 ,
 
 583 F.3d 494
 
 , 499 (7th Cir. 2009) (proclaiming a prior decision was not binding where that decision "relied on a misunderstanding of our prior precedent" and a mistake in reasoning),
 
 vacating on other grounds
 
 ,
 
 559 U.S. 1034
 
 ,
 
 130 S.Ct. 2061
 
 ,
 
 176 L.Ed.2d 411
 
 (2010) ;
 
 United States v. Humphrey
 
 ,
 
 34 F.3d 551
 
 , 560 (7th Cir. 1994) (Posner, J., concurring) ("[W]e should be quick to terminate gratuitous intracircuit conflicts."). If circulation to the entire court under Circuit Rule 40(e) is necessary, then that is the proper course of action rather than perpetuating a conflict and faulty reasoning.
 
 See
 

 Shropshear v. Corporation Counsel of Chicago
 
 ,
 
 275 F.3d 593
 
 , 597 (7th Cir. 2001).
 

 As explained above, it is highly questionable whether this case, like
 
 Matthiessen
 
 , remains good law after
 
 Easter House
 
 . In his
 
 Easter House
 
 dissent, Judge Cudahy observed that
 
 Tavarez
 
 construed
 
 Parratt
 
 narrowly, while the
 
 en banc
 
 majority in
 
 Easter House
 
 adopted a broad interpretation (and a correspondingly narrow interpretation of
 
 Zinermon
 
 ).
 
 910 F.2d at 1410-11
 
 (Cudahy, J., dissenting). It seems Judge Cudahy was correct that
 
 Easter House
 
 implicitly rejected the interpretation of
 
 Parratt
 
 set forth in
 
 Tavarez
 
 .
 

 This determination by the district court that there was no official policy simply because the county and town did not have rules requiring the deprivation was clearly wrong under
 
 Monell
 
 and
 
 Pembaur
 
 , since the actions of high-ranking policymakers can represent official policy. However, looking to the county and town policies to determine if the act was unauthorized was the wrong question to be asking to begin with. On appeal, we continued the district court's error by focusing on the town and county's perspective rather than the State that clothed the town and county with authority to act.
 

 Had that been the basis for the court's decision in
 
 Michalowicz
 
 , that case would have conflicted with
 
 Easter House
 
 , where we held "Easter House's attempt to limit the application of
 
 Parratt
 
 according to the magnitude of the deprivation at issue is directly refuted by the Supreme Court in
 
 Zinermon
 
 ."
 
 910 F.2d at 1398
 
 .
 

 As explained in
 
 Kauth v. Hartford Ins. Co. of Illinois
 
 ,
 
 852 F.2d 951
 
 , 955 n.8 (7th Cir. 1988), where
 
 Parratt
 
 applies, there is no due process violation and thus no grounds for a § 1983 action; therefore,
 
 Patsy
 
 is not implicated.
 

 See, e.g.,
 
 Caine v. Hardy
 
 ,
 
 943 F.2d 1406
 
 , 1418-19 (5th Cir. 1991) (en banc) (Williams, J., dissenting).